**Lansing, Michigan**

# Opinion

Chief Justice:                    Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                                      Marilyn Kelly
                                      Stephen J. Markman
                                      Diane M. Hathaway
                                      Mary Beth Kelly
                                      Brian K. Zahra

FILED MAY 17, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                                                          No. 142537

MALINI RAO,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

In *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), this Court reiterated the four-part test that has governed motions for a new trial based on newly discovered evidence for well over a century. This case requires us to elucidate, and reemphasize, several aspects of this test. We begin with the unremarkable observation that when the defendant possesses knowledge of evidence at the time of trial, that evidence cannot be characterized as "newly discovered" under the first part of the *Cress* test. In addition, we clarify that knowledge of evidence at the time of trial necessarily implicates the third part of the *Cress* test, which requires the defendant to undertake

"reasonable diligence" to discover and produce the evidence at trial. Finally, we emphasize that the defendant carries the burden of making the requisite showing regarding each of the four parts of the *Cress* test. Adherence to these principles-- each of which is discernable from our caselaw-- is necessary to maintain the balance between generally upholding the finality of criminal judgments, and unsettling such judgments in the unusual case in which justice under the law requires.

The Court of Appeals strayed from these principles, in our judgment, by overlooking that defendant and defense counsel were both well aware at the time of trial that the alleged newly discovered evidence could have supported the defense and impermissibly relieved defendant of her burden of showing that she could not, through the exercise of reasonable diligence, have discovered and produced the evidence at trial. Accordingly, we reverse the judgment of the Court of Appeals, reinstate the trial court's order denying defendant's motion for a new trial, and remand to the Court of Appeals for consideration of defendant's remaining issues.

## I. FACTS AND HISTORY

Defendant, Malini Rao, was convicted of abusing her daughter, RS, who was 3½ years old at the time of trial. Defendant and her husband had adopted RS from an orphanage in India in August 2006 when she was 21 months old, and defendant is the child's primary caretaker. At a 10-day jury trial, Child Protective Services (CPS) worker Michelle Sparks testified that she had visited defendant's home on October 11, 2007, after CPS received a referral alleging that RS had facial bruising and was not verbal. Sparks observed that the child had "a lot of facial bruising," including a "goose egg" over her left eyebrow, a blackened left eye, a bruise on the left check, a large bump on her

2

right cheekbone, a cut across the bridge of her nose, and several splits in her lower lip. When Sparks asked defendant about how she disciplined the child, defendant said that she used time-outs and spankings. However, when Sparks specifically asked about the bruises on the child's face, defendant told her that she "does beat [RS] about the face" and demonstrated her technique by hitting the seat of a chair, using a forceful swing from the shoulder with an open hand. Sparks testified that, in her opinion, defendant's demonstration was more than just a slap.

On the basis of her interview and observations, Sparks determined that a medical examination of the child was necessary and accompanied defendant to the emergency room, where the child was examined by Dr. Robert Cohen. Dr. Cohen observed that the child had multiple bruises, cuts, and scratches on her face and upper body. He ordered a "babygram," a head-to-toe x-ray of every bone in the body to assess any fractures, which indicated multiple bilateral rib fractures. Dr. Cohen concluded that while any of the child's injuries, if viewed individually, could have been caused by an accident, the sheer number of injuries made him suspicious that they were caused by "nonaccidental trauma" or child abuse. Following the medical examination, Sparks concluded that the allegations of abuse and neglect had been substantiated and categorized the case as "Category 1," which CPS uses to designate a case presenting the highest level of risk. Both of defendant's children were removed from her home that night and placed with friends of the family the following day.

Defendant testified in her own defense. She admitted striking the child on the face once or twice, but denied ever using the word "beat" in her interview with Sparks. In addition to Sparks, defendant, and other lay witnesses, nine medical expert witnesses

testified at trial about their opinions regarding the child's injuries. The central disagreement between the prosecutor's and defendant's experts concerned the cause of the injuries. The prosecutor's experts concluded that nonaccidental trauma was the only possible explanation for the injuries. These experts included Dr. Wilbur Smith (a pediatric radiologist) and Dr. Marcus DeGraw (a pediatrician, board-eligible in child abuse pediatrics), who examined the child in November 2007. At his examination, Dr. DeGraw ordered a skeletal survey and a host of tests that could possibly provide an explanation for the child's injuries other than abuse. The skeletal survey revealed no new fractures since the child's removal from defendant's home and also showed no evidence of genetic or metabolic disease. After reviewing these results and considering "not just the rib fractures, but all injuries," Dr. DeGraw concluded that "there was no other explanation" for the child's injuries than abuse. He found further support for his conclusion in the child's "tremendous" weight gain after being removed from defendant's home, when her growth increased from below the 3d percentile in September 2007 to the 55th to 60th percentile in June 2008.

The defense called several medical experts, none of whom were qualified as pediatricians, board-eligible in child abuse pediatrics, and all of whom disagreed with the prosecutor's experts that the cause of the child's injuries was abuse. These experts offered various theories to explain the child's injuries, in particular that they were attributable to anomalies the child had suffered at birth, metabolic abnormalities, accidental trauma, a "failure to thrive," or a combination of these issues. Specifically, Dr. Robert Rothfeder, a physician who practices emergency medicine, testified that the abnormalities shown on the x-rays "relate to a number of disease issues that [RS] had

4

suffered." And Dr. David Kellam, a pediatric radiologist, opined that the child had faulty bone structure caused by metabolic abnormality, disease, malnutrition or a combination thereof such that the "ordinary activity of the child and everyday existence" caused the fractures.

It is particularly significant to note that defense counsel asked Drs. Kellam, Smith, and DeGraw whether additional x-rays of the child's ribs performed after November 14, 2007, the date that her last x-rays were taken, might have affected their opinions. The lengthy exchanges at trial concerning the potential effect of additional x-rays indicate that the three experts agreed that additional x-rays would only have assisted in their evaluation if new fractures were identified. However, they disagreed concerning the risk that additional x-rays would have posed to the child. Dr. DeGraw was of the opinion that additional x-rays would be "dangerous" because of the increased exposure to radiation. Dr. Smith testified that additional x-rays "certainly wouldn't hurt her, but that's still probably not medically necessary." And Dr. Kellam testified that the risk to the child "is zero."

The jury convicted defendant of second-degree child abuse, MCL 750.136b(3), and the trial court sentenced her to 5 years' probation, with 90 days in jail. Subsequently, 10 months after her conviction, defendant moved for a new trial, asserting that newly discovered evidence warranted that this motion be granted. Specifically, she submitted x-rays of RS performed in May 2009 and a radiology report from Dr. Donald Gibson, which identified "irregularities" on several ribs and asserted that such irregularities "may be due to old fractures." Defendant also attached a supplemental report from Dr. Rothfeder, in which he contended that the new radiology report

5

confirmed that "[RS] most likely suffered from metabolic bone disease when she came to this country." In response to defendant's motion, the prosecutor submitted a letter from Dr. Gibson, which stated, "The changes in the ribs described in my report could be accounted for on the basis of past trauma. I did not, in my opinion, see any evidence on the films to suggest metabolic bone disease." (Emphasis omitted.)

The trial court denied defendant's motion in a lengthy opinion and order, concluding that it could not find that the evidence "is in fact newly discovered, that the evidence is not cumulative, that the evidence would likely produce a different result at trial, or that Defendant could not, using reasonable diligence, have discovered and produced said evidence at trial." In a divided opinion, the Court of Appeals disagreed, reasoning in relevant part that the proffered evidence was newly discovered and could not have been previously discovered with reasonable diligence. *People v Rao*, unpublished opinion per curiam of the Court of Appeals, issued December 7, 2010 (Docket No. 289343), pp 8-9, 11. Given these determinations, the Court of Appeals reversed the trial court and remanded for an evidentiary hearing "to address whether the new evidence likely would have affected the outcome of defendant's trial." *Id*. at 12. Judge MURRAY in dissent argued that the trial court did not abuse its discretion by concluding that the evidence was not newly discovered and that, even if it were, it would not have made a different result probable on retrial. *Id*. at 2, 4 (MURRAY, J., dissenting). The prosecutor appealed, and this Court ordered that oral argument be heard on the application for leave to appeal. *People v Rao*, 489 Mich 983 (2011). Argument was heard on January 11, 2012.

6

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial. *People v Lemmon*, 456 Mich 625, 648 n 27; 576 NW2d 129 (1998). An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231(2003).

## III. ANALYSIS

## A. *CRESS* TEST

This Court has long held that a new trial may be granted on the basis of newly discovered evidence and has applied the same four-part test for ruling on such motions for over a century. See, e.g., *Canfield v City of Jackson*, 112 Mich 120, 123; 70 NW 444 (1897); *People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996). This test was most recently reaffirmed in *Cress*, 468 Mich at 692, in which we stated:

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and (4) the new evidence makes a different result probable on retrial. [Citations omitted.]

The defendant carries the burden of satisfying all four parts of this test. *Id*.

It is equally well established that "motions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor, and the cases where this court has held that there was an abuse of discretion in denying a motion based on such grounds are few and far between." *Webert v Maser*, 247 Mich 245, 246; 225 NW 635 (1929). The rationales underlying this proposition are apparent. "A motion for a new trial, upon the

ground of newly-discovered evidence, is not regarded with favor . . . [because] [t]he policy of the law is to require of parties care, diligence, and vigilance in securing and presenting evidence." *Canfield*, 112 Mich at 123 (quotation marks and citation omitted); see also 58 Am Jur 2d, New Trial, § 322, p 320 ("Such applications are entertained with reluctance and granted with caution . . . because of the manifest injustice in allowing a party to allege that which may be the consequence of his or her own neglect in order to defeat an adverse verdict.").

Further, this proposition respects "[t]he principle of finality [that] is essential to the operation of our criminal justice system." *People v Maxson*, 482 Mich 385, 398; 759 NW2d 817, 825 (2008) (quotation marks and citation omitted). That is, in fairness to both parties and the overall justice system, the law requires that parties secure evidence and prepare for trial with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case. It is the obligation of the parties to undertake all reasonable efforts to marshal *all* the relevant evidence for that trial. Evidence will not ordinarily be allowed in installments. *Cress* set forth the showing that a defendant must make in order to satisfy the exception to this rule and struck a balance between upholding the finality of judgments and unsettling judgments in the unusual case in which justice under the law requires a new trial. See also MCR 6.431(B) (providing that the trial court "may order a new trial . . . because it believes that the verdict has resulted in a miscarriage of justice").

Whether defendant is entitled to a new trial on the basis of her proffered evidence is governed by *Cress*, and specifically her case is resolved by applying the interrelated first and third parts of the *Cress* test, which require that defendant demonstrate that the

evidence is "newly discovered" and that she "could not, using reasonable diligence, have discovered and produced the evidence at trial[.]" *Cress*, 468 Mich at 692. After applying the *Cress* test, we conclude that defendant did not carry her burden of satisfying this test and thus is not entitled to a new trial.

## B. REASONABLE DILIGENCE

Michigan caselaw makes clear that evidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial. See, e.g., *People v Purman*, 216 Mich 430, 438-439; 185 NW 725 (1921) ("This evidence was not newly-discovered. The defendant had known, according to his own showing, of this evidence . . . ."); *People v Lewis*, 31 Mich App 433, 437; 188 NW2d 107 (1971) ("[T]his sworn statement . . . admits that defendant was well aware of [the] information prior to trial. This information cannot be classified as newly discovered."); *People v Burton*, 74 Mich App 215, 222-223; 253 NW2d 710 (1977) ("[E]vidence is newly discovered if it can be shown to have been unknown to the defendant or his counsel at the time of trial."). Indeed, because "[o]ne does not 'discover' evidence after trial that one was aware of prior to trial," this is the only reasonable understanding of "newly discovered evidence." *People v Terrell*, 289 Mich App 553, 563; 797 NW2d 684 (2010) (emphasis omitted) (quotation marks and citation omitted). "To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding. *See Webster's Third New Int'l Dictionary* 647 (2002) (defining 'discover' as 'to make known (something secret, hidden, unknown, or previously unnoticed)')." *Id*. (quotation marks and citation omitted).

Further, Michigan courts have held that a defendant's awareness of the evidence at the time of trial precludes a finding that the evidence is newly discovered, even if the

9

evidence is claimed to have been "unavailable" at the time of trial. This rule has been applied in various circumstances giving rise to the evidence's claimed "unavailability." In *Purman*, 216 Mich at 438-439, we explained that a "new trial will not be granted because of newly-discovered evidence where the witness who was to give it was known to the accused, although he could not be found at the time of the trial, where no continuance or postponement was requested." In *People v Newhouse*, 104 Mich App 380, 386; 304 NW2d 590 (1981), the Court of Appeals rejected a defendant's claim that his evidence was newly discovered because "trial strategy" prevented him from producing the evidence at trial. *Newhouse* explained that the "[d]efendant could have, with reasonable diligence, produced [the witness] to testify at trial. Defendant *chose* not to produce [the witness]." *Id*. (emphasis added). And in *Terrell*, 289 Mich App at 559-560, a codefendant invoked his Fifth Amendment right not to testify at trial, but then, after trial, came forward with exculpatory testimony. *Terrell* held that the evidence was not newly discovered, but was instead "newly available," explaining:

> [W]hen a defendant knew or should have known that a codefendant could provide exculpatory testimony, but did not obtain that testimony because the codefendant invoked the privilege against self-incrimination, the codefendant's posttrial statements do not constitute newly discovered evidence, but are merely newly available evidence. [*Id*. at 555.][1]

---

[1] Federal courts have likewise held that evidence that was unavailable at trial cannot be deemed newly discovered if the defendant was aware of the evidence before trial. For cases applying the rule in the context of the Fifth Amendment privilege, for example, see *United States v Glover*, 21 F3d 133, 138-139 (CA 6, 1994); *United States v Owen*, 500 F3d 83, 88 (CA 2, 2007); *United States v DiBernardo*, 880 F2d 1216, 1224 (CA 11, 1989). See also *United States v Turns*, 198 F3d 584, 587 (CA 6, 2000) (applying the same rule in a case in which the defendant asserted that the evidence was unavailable because the witness who was to provide the evidence had threatened to perjure herself at trial).

These cases-- each of which involved evidence that was known to the defendant at the time of trial, but was claimed to have been unavailable for various reasons-- illustrate the connection between the "newly discovered" and "reasonable diligence" requirements in parts one and three, respectively, of the *Cress* test. The first part of the *Cress* test focuses on whether the evidence is "newly discovered," i.e., was "unknown to the defendant or his counsel at the time of trial." *Burton*, 74 Mich App at 222-223. When evidence is known to the defendant at the time of trial, but is claimed to have been unavailable, the third part of the *Cress* test is necessarily implicated because it requires a showing that the defendant "could not, using reasonable diligence, have discovered and produced the evidence at trial[.]" *Cress*, 468 Mich at 692. In other words, under *Cress*, when a defendant is *aware* of evidence before trial, he or she is charged with the burden of using *reasonable diligence* to make that evidence available and produce it at trial. A defendant who fails to do so cannot satisfy the first and third parts of the *Cress* test.

We note that what constitutes reasonable diligence in producing evidence at trial depends on the circumstances of the case. When the evidence is claimed to be unavailable because a witness cannot be found, reasonable diligence may include requesting a continuance or postponement. See *Purman*, 216 Mich at 439. When the evidence is claimed to be unavailable because of a witness's threat of perjury, reasonable diligence may include subpoenaing and questioning the witness under penalties of perjury. See *United States v Turns*, 198 F3d 584, 587 (CA 6, 2000). When the evidence is claimed to be unavailable because of its incompatibility with the defendant's trial strategy, reasonable diligence requires the defendant to choose between that strategy and the evidence. See *Newhouse*, 104 Mich App at 386. And when the evidence is claimed

11

to be unavailable because of a codefendant's assertion of the Fifth Amendment privilege, reasonable diligence might include requesting a severance or pursuing other procedural remedies to admit the testimony. See *Terrell*, 289 Mich App at 568-569. The point is that the law affords a defendant procedural avenues to secure and produce evidence and, under *Cress*, a defendant must employ these avenues in a timely manner because evidence that is known to the defendant, yet not produced until after trial, will not be considered grounds for a new trial.

This rule is dictated by *Cress* and is consistent with the principles underlying our decision in that case. "The policy of the law is to require of parties care, diligence, and vigilance in securing and presenting evidence," *Canfield*, 112 Mich at 123, and "[t]he principle of finality is essential to the operation of our criminal justice system," *Maxson*, 482 Mich at 398 (quotation marks and citation omitted). If evidence that was known to the defendant before trial, but not produced until after trial because the defendant failed to exercise reasonable diligence, is deemed newly discovered and sufficient to warrant a new trial, this would contravene both the principles of fairness and finality on which *Cress* is grounded. Specifically, as the Court of Appeals explained in *Terrell*, it would permit defendants to engage in "judicial sandbagging":

> [The defendant's] evidence is not newly discovered because allowing criminal defendants to raise such allegations [i.e., that an uncalled witness's proposed testimony is newly discovered evidence] after a judgment of conviction has been entered . . . would permit them to "sandbag" the fairness of the trial by withholding or failing to seek material, probative evidence and later attempting to collaterally attack their convictions . . . . [*Terrell*, 289 Mich App at 566 (second alteration in original) (quotation marks and citations omitted).]

If such evidence were deemed newly discovered, it would reward carelessness, neglect, and gamesmanship, at the expense of thorough trial preparation and the finality of criminal judgments.

## C. APPLICATION

The Court of Appeals did not dispute the understanding that to be characterized as newly discovered, evidence must be "'shown to have been unknown to the defendant or his counsel at the time of trial.'" *Rao*, unpub op at 8, quoting *Burton*, 74 Mich App at 222-223.[2] Yet it nevertheless determined that defendant's proffered evidence was newly discovered, a determination that we cannot reconcile with the trial record.

The evidence at issue consists of additional x-rays of the child's ribs performed after her last skeletal survey in November 2007 and two doctors' interpretive reports of these x-rays. The trial record leads inescapably to the conclusion that defendant and defense counsel were aware of this evidence at the time of trial because counsel repeatedly questioned medical experts at length about this exact evidence. Specifically, defense counsel asked Dr. Smith whether performing x-rays "once every couple of months" might have been prudent in order to "tell whether or not there were any more fractures from November 14th to the present time[.]" Similarly, counsel asked Dr.

---

[2] However, the majority did disagree with its dissenting colleague that defendant's proffered evidence was not newly discovered "because the evidence did not exist at the time of trial." *Rao*, unpub op at 3 (MURRAY, J., dissenting). It is unnecessary for us to address whether newly discovered evidence must actually have been in existence at the time of trial because we find it clear that defendant was aware of the *potential availability* of the evidence at that time, and thus the evidence is not newly discovered. See e.g., *Purman*, 216 Mich at 438-439; *Burton*, 74 Mich App at 222-223.

13

DeGraw whether additional x-rays "could have substantiated the fact that this child has continuous rib fractures in normal activity[.]" And defense counsel pointedly asked his own expert, Dr. Kellam, "If the additional x-rays had been taken at any time between November 14 and the present time, what additional information would you or any other radiologist -- how could that have helped as far as evaluating this child?"

These questions are mere excerpts from lengthy exchanges between defense counsel and the testifying experts concerning how additional x-rays of the child's ribs performed after November 14, 2007, *could* have affected their medical opinions, and specifically about the possibility that such x-rays "*could* have substantiated the fact that this child has continuous rib fractures in normal activity" and thus *could* have assisted the defense. (Emphasis added.) It is not clear that the Court of Appeals was fully cognizant of the multiple and extensive discussions at trial about additional rib x-rays. However, the majority was undisputedly aware of Dr. Kellam's testimony on the subject, having explicitly addressed it in its opinion. Dr. Kellam's testimony alone is sufficient to establish that defendant was well aware of the potential effect of the evidence she now offers as newly discovered evidence.

The Court of Appeals reached a contrary conclusion because it framed the issue in terms of whether defendant had been aware at the time of trial of the *actual* medical information revealed in the May 2009 x-rays. That is, the majority asked whether at the time defendant had been aware of the "current x-ray appearance of [RS's] ribs" and concluded that she "undeniably lacked any awareness" of this information. *Rao*, unpub op at 8. This conclusion, however, begs the question *why* defendant lacked awareness at the time of trial of the "current x-ray appearance" of the child's ribs. As the trial record

14

makes clear, it is not because defendant was unaware of the medical technology needed to obtain this information (x-rays); it is not because defendant was unaware of which body part to submit to x-rays (ribs); it is not because defendant was unaware of the relevant period in which those x-rays needed to be performed (after November 14, 2007); and it is not because defendant was unaware that the results of the x-rays "could" have supported her defense.

Rather, defendant claims that the reason she was unaware of the appearance of the child's ribs at the time of trial is that such x-rays had been unavailable to her. Specifically, in her brief to this Court, defendant asserts that additional x-rays were not taken before trial "because the prosecution expert, Dr. DeGraw, considered any further x-rays of [RS] to impose an unnecessary cancer risk to [the child]." The Court of Appeals further observed that "[RS] had been placed in the custody of the Department of Human Services, thus precluding defendant and her counsel from having the ability to obtain current radiologic evidence." *Rao*, unpub op at 8.

As these arguments make evident, defendant's claim of newly discovered evidence is more accurately characterized as a claim of newly available evidence, which implicates *Cress*'s reasonable-diligence requirement. In its very brief analysis of reasonable diligence, the Court of Appeals stated that "[g]iven defendant's lack of access to [RS] and the prosecution's unwillingness to submit the child to another set of films, we conclude that, employing reasonable diligence, defendant could not have discovered and produced the recent skeletal survey at trial." *Id*. at 11. In further support of this conclusion, both defendant and the Court of Appeals rely heavily on the fact that the

15

prosecutor has not "advanced" the view that defendant could have obtained additional x-rays at trial. *Id.*

These arguments are flawed for several reasons. First, to the extent that defendant argues that the prosecutor has somehow waived the issue of reasonable diligence, this argument lacks merit.[3] The prosecutor opposed defendant's motion for a new trial, citing *Cress*. The trial court then denied defendant's motion, determining that defendant had not satisfied any part of the *Cress* test, including the reasonable-diligence requirement. The Court of Appeals then considered all parts of the *Cress* test, including the reasonable-diligence requirement. And in her briefs to this Court, the prosecutor continues to cite the entirety of the *Cress* test, with the matter of reasonable diligence having been amply discussed at oral argument. Thus, the issue of reasonable diligence has not been waived, and the fact that the prosecutor may have focused on other parts of the *Cress* test does not limit our review of the entirety of a test whose applicability to this case has been fully preserved.[4]

---

[3] After oral argument in this Court, defendant moved to file a second supplemental brief, arguing that the prosecutor "never claimed that the condition of [RS's] ribs as demonstrated by the 2009 X-rays should have been discovered . . . through the exercise of due diligence" and suggesting that the issue is waived. We granted defendant's motion and have considered the arguments therein.

[4] Moreover, while an appellate court will not ordinarily review an issue that has been abandoned or waived, such review is allowed when it is "necessary to a proper determination of a case . . . ." *Dation v Ford Motor Co*, 314 Mich 152, 160-161; 22 NW2d 252 (1946). Given the inextricable connection between the "newly discovered" and "reasonable diligence" requirements in parts one and three of the *Cress* test, even if the prosecutor *had* waived the issue of reasonable diligence-- which, in our judgment, she did not-- this exception may well be applicable. "[A]ddressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle." *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47, 59 (2002).

16

Second, the Court of Appeals' assertion that the prosecutor did not "advance" the view that defendant could have obtained additional x-rays at trial reveals a fundamental misapprehension about *Cress*. Because defendant bears the burden on all parts of the *Cress* test, defendant is required to make an affirmative showing that she "could not, using reasonable diligence, have discovered and produced the evidence at trial[.]" *Cress*, 468 Mich at 692 (quotation marks and citations omitted). The prosecutor's emphasis on other interconnected parts of the test does not relieve defendant of this burden.

Third, when the issue of reasonable diligence is considered against the backdrop of the proper burden of proof, the Court of Appeals' conclusion cannot be sustained. To begin with, the rationales that defendant offers, and that the Court of Appeals accepted, for why she could not have produced additional x-rays at trial are not entirely supported by the record. While it is true that the child was in the custody of the Department of Human Services, it is also true that an attorney for defendant nonetheless arranged medical examinations of the child after removal.[5] In addition, it is not clear that the alleged cancer risk posed by additional x-rays imposed an absolute bar on defendant's ability to secure the evidence. The medical experts offered varied testimony on this issue, and although the only expert cited by defendant in support of this proposition, Dr. DeGraw, indicated that additional x-rays would be "dangerous," two other defense experts, Dr. Smith and Dr. Kellam, who are uncited in this appeal, testified to the contrary.

---

[5] After being removed from defendant's home, RS was taken to several medical appointments that were arranged by the family's lawyer in the neglect proceeding, Arthur Greenstone.

17

More importantly, the Court of Appeals' conclusion on reasonable diligence is unsupportable because defendant has not shown that she did the one thing that reasonable diligence would, at a minimum, have required in these circumstances: move in the trial court for an order permitting additional x-rays of the child's ribs to be taken.[6] That is, even assuming that defendant did not have access to the child, and even assuming that the prosecutor opposed additional x-rays, the obvious course for a defendant who wanted to offer this evidence at trial would have been to bring a motion before the court for the obtaining or production of that evidence.

Moreover, we believe that defense counsel's decision not to bring such a motion does not appear to have been inadvertent, nor does it appear to have been unreasonable. Indeed, several weeks before trial, counsel brought a motion for additional discovery, which expressly requested any "post-placement medical records, *including X-rays*" that had not previously been provided by the prosecutor or the Department of Human Services. (Emphasis added.) Thus, it is apparent that defense counsel was well aware of the possible significance of additional x-rays and desired to review those x-rays if they had been performed. However, he chose not to bring a motion to obtain or produce the x-rays. It appears to us that this decision was well within the range of reasonable trial strategy. As defense counsel's questioning of the medical experts makes clear, additional x-rays could have revealed, not evidence that was *exonerating*, but no new fractures and thus evidence that was further *implicating*. By choosing not to obtain additional x-rays,

---

[6] "[I]n a criminal case, a trial court has the discretion to grant additional discovery." *People v Valeck*, 223 Mich App 48, 50; 566 NW2d 26 (1997).

18

counsel may well preferred to leave open the possibility that additional x-rays would have supported the defense, so that he could repeatedly make the following argument to the jury, as he did in his closing:

> [If] [s]omewhere between November and now she would have been given just another set of x-rays just like what Dr. DeGraw did. And let's say that there were new separations or fractures or cracks different than November 14. That would be a certainly very, very good proof that this was a metabolic bone disease and it wasn't done by Malini Rao . . . ."

In light of the obvious strategic reasons for defendant's choice not to obtain additional x-rays, we have little difficulty concluding that she has not satisfied parts one and three of the *Cress* test, i.e., its "newly discovered" and "reasonable diligence" requirements.[7]

## IV. CONCLUSION

Defendant was aware at the time of trial of the allegedly newly discovered evidence and did not carry her burden of showing that she used reasonable diligence to produce the evidence at trial. Consequently, defendant has failed to satisfy the first and third parts of the *Cress* test. We reverse the judgment of the Court of Appeals, reinstate

---

[7] Because defendant must satisfy all four parts of the *Cress* test, our determination that defendant has not satisfied parts one and three makes it unnecessary to consider the remaining parts. Accordingly, contrary to the dissent's contention, this case is fully "ripe" for our review, and there is no need for an evidentiary hearing to address asserted factual questions pertaining to part four.

the trial court's order denying defendant's motion for a new trial, and remand to the Court of Appeals for consideration of defendant's remaining issues.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

CAVANAGH, J.  I concur in the result only.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                          No. 142537

MALINI RAO,

      Defendant-Appellee.

---

HATHAWAY, J. (*dissenting*).

I respectfully dissent from the majority's decision in this matter. I would deny leave to appeal because, unlike the majority, I believe that the Court of Appeals correctly analyzed the four-part test from *People v Cress*, 468 Mich 678; 664 NW2d 174 (2003). I find the Court of Appeals' analysis of part four of the test particularly persuasive. Significant questions of fact remain regarding whether defendant has met the fourth part of the test. As the Court of Appeals stated:

> Defendant has set forth substantial evidence supporting her position that a jury made aware of (1) [the child's] nonhealing ribs and femur, and (2) the child's possible suffering of a new fracture of rib 10 while outside defendant's custody, would have reached a different verdict. Because important factual questions remain unanswered concerning the significance of the 2009 skeletal survey, we remand this case to the trial court for an evidentiary hearing to address whether the new evidence likely would have affected the outcome of defendant's trial.[1]

---

[1] *People v Rao*, unpublished opinion per curiam of the Court of Appeals, issued December 7, 2010 (Docket No. 289343), p 12.

Because there are important factual questions remaining concerning whether the new evidence likely would have affected the outcome of defendant's trial, this matter is not ripe for this Court's review. Therefore, I would deny leave to appeal, allow the trial court to conduct the evidentiary hearing, and allow the Court of Appeals to review the trial court's findings and conclusions regarding the probability of a different result on retrial. Accordingly, I dissent.

Diane M. Hathaway
Marilyn Kelly