# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BERNARD JOSEPH DZIUBA,

        Defendant-Appellant.

UNPUBLISHED
July 12, 2016

No.  327265
Alpena Circuit Court
LC No.  14-006207-FH

Before:  OWENS, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

Following a bench trial, defendant was found guilty of operating a motor vehicle while intoxicated, third offense (OWI 3d), MCL 257.625(1), (9)(c), and sentenced to six months in jail. Defendant appeals as of right, claiming that he should be granted a new trial based on newly discovered evidence.  For the reasons set forth in this opinion, we affirm.

## I.  FACTS

At approximately 9:30 p.m. on a May 2014 evening, Michigan State Police Sergeant Shane Smith was traveling eastbound on a state trunkline when he noticed a motorcycle in front of him "that had hit its brake lights."  The officer testified that defendant stopped and made a big U-turn, and almost lost control.  Smith's radar indicated that the motorcycle was traveling at 65 miles per hour, 20 miles per hour over the speed limit.  Smith pursued the motorcycle, which was weaving across the roadway.

Defendant testified that he had been at a place called "the Eagles" from 12:00 (presumably noon) until 8:00 p.m., where he "had two beers and a RumChata," as well as a "couple [of] Cokes" and some food.  When he arrived home, defendant stated, he had problems breathing; defendant testified that he has asthma.  He did not have an "asthma sprayer," he testified, so he used his sisters and then went to get his prescription filled.  When defendant arrived at the pharmacy it was closed so he headed back home on his motorcycle.

Sergeant Smith testified that when defendant got off his motorcycle, he fell back against a wall, "[l]ike he lost . . . his balance."  When defendant stumbled or tripped over something as he headed for a door to the home, Smith got on top of defendant and handcuffed him.  Smith testified that he asked defendant to perform some field sobriety tests, one of which was to recite the alphabet.  According to Smith, defendant's performance on this test was the worst he had

-1-

seen in 21 years.  Smith also asked defendant to pick a number between 19 and 21.  After defendant paused for twenty seconds, Smith said, defendant answered "3."

As Smith was taking defendant to jail, he complained that he was having an asthma attack and asked for his inhaler.  According to Smith, defendant did not have an inhaler with him.  Smith called defendant's sister, Betty Alexander, who brought an inhaler to defendant.  Smith stated that they did not take the inhaler to the jail, but defendant said that the inhaler was at the police station.

Smith used a breathalyzer to test defendant's alcohol level.  Smith administered two tests, one at 10:41 p.m. and a second at 10:44 p.m.  Smith explained that the test administrator must watch the person to be tested for fifteen minutes before the test is given to ensure that the person does not put anything in his or her mouth.  Smith began the observation period at approximately 10:15 p.m.  According to Smith, defendant did not put anything in his mouth.  Defendant, however, testified that the officer handed him an asthma inhaler while he was being booked at the jail and that he used the inhaler during the booking process.  The results of both of defendant's breath tests were 0.13.

During trial, defendant stated that he currently possessed the inhaler that he used on the night he was arrested.  With the permission of the court, and at defendant's request, Smith administered a preliminary breath test (PBT) to defendant, then defendant took two puffs from the inhaler, then Smith administered another PBT three minutes later.  Both PBTs resulted in a reading of 0.000.

Defendant was convicted and sentenced as set forth above.  This appeal ensued.

## II. ANALYSIS

On appeal, defendant claims that he has newly discovered evidence that undermines his conviction and that he therefore should be granted a new trial.  The evidence defendant claims is newly discovered is the result of an independent blood alcohol content (BAC) test that he conducted after trial.  Defendant explains that he took a PBT once before using the same asthma inhaler that he used the night he was arrested, once within two minutes after using the inhaler, and once after another two minutes.  Defendant reports that his BAC after each of these tests was 0.000, 0.047, and 0.007, respectively.

A new trial may be granted based on newly discovered evidence only if "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial."  *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (internal quotation marks and citations omitted).

Absent unusual circumstances, it is the parties' responsibility to take reasonable efforts to assemble all the relevant evidence at the time of trial.  *People v Rao*, 491 Mich 271, 280; 815 NW2d 105 (2012).  "[E]vidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial."  *Id*. at 281.  In such a situation, even if the defendant

claims the evidence was unavailable at the time of trial, the evidence is not newly discovered. *Id.* at 283.

At the outset we note that defendant has failed to articulate how evidence of the tests that he conducted is admissible under the rules of evidence. Under MRE 702, a trial court may admit expert testimony regarding scientific, technical, or other specialized knowledge only if the court determines that the expert testimony "meets [MRE 702's] standard of reliability" so as to prevent the introduction of "junk science." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004). In contrast, a lay witness can offer lay opinion testimony only if the testimony is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based in scientific, technical, or other specialized knowledge within the scope of [MRE 702]." Here, defendant does not contend that he had specialized knowledge such that he was qualified to testify as an expert; thus, he was not qualified to offer opinion testimony regarding the results or reliability of his experiment. MRE 702; see also *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 589, 594-595; 113 S Ct 2786; 125 L Ed 2d 469 (1993). For the same reasons, defendant's testimony was not admissible under MRE 701. Nevertheless, even if we were to assume that the results of the tests were admissible, defendant has failed to show that the evidence warrants a new trial under *Cress*, 468 Mich at 692.

Defendant argues that the evidence is newly discovered because he did not perform the independent BAC test until after trial. However, merely because defendant conducted the test after trial does not negate that defendant could have performed the test before trial. Indeed, defendant does not suggest that he was unaware of the availability of conducting an independent BAC test with the inhaler before trial and introducing the results at trial. Defendant contended throughout trial that the inhaler caused an increase in his BAC. Defendant had the inhaler in his possession and even brought it into court. In other words, he had all the information and material needed to perform the test and knew that the results could have supported his defense. Thus, the results of the test are not newly discovered but merely newly available. *Rao*, 491 Mich at 284-286.

Moreover, although defendant suggests he had no motive to perform the test and introduce evidence of it at trial because the court allowed a PBT demonstration on the record, this was a strategic decision presumably taken by defendant in the belief that the in-court PBT would yield favorable results. Such a strategy affects the materiality of defendant's independent test. That defendant did not discover until after trial that an independent BAC test would be material does not make the evidence itself newly discovered. However, defendant's evidence is not cumulative because there was no evidence admitted at trial indicating that using the inhaler increases a user's BAC, which is what defendant's purported evidence would show.

The third requirement relates back to the first. See *Id*. at 283. Because defendant's evidence was merely unavailable before trial, he had "the burden of using *reasonable diligence* to make that evidence available and produce it at trial." *Id*. (emphasis in original). If the evidence conflicts with the trial strategy, the defendant must choose between that strategy and the evidence. *Id*. at 284. Here, defendant could have produced the "newly discovered" evidence at trial, i.e., he could have performed the independent test and introduced the results. Defendant chose not to, instead relying on the in-court PBT. His choice to use a different method of

introducing what he presumably thought would be the same evidence does not negate his lack of diligence in pursuing the particular evidence that he claims is newly discovered.

And, importantly, defendant's claimed newly discovered evidence would not have made a different outcome probable. The proffered evidence indicates that two minutes after defendant used the inhaler, his BAC was 0.047, and two minutes after that it was 0.007. Thus, only four minutes after using the inhaler, defendant's BAC was negligible. There is no evidence that some interaction between medicine taken through an inhaler and alcohol in a person's system would impact this rate of decline. While there is conflicting testimony as to when defendant last used the inhaler before being tested on the night he was arrested, the trial court indicated that it found Sergeant Smith's testimony to be more credible than defendant's. We defer to that judgment. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Given Smith's testimony that he did not observe defendant put anything in his mouth for at least fifteen minutes before administering the breathalyzer test, the new evidence would have little to no impact on the outcome of the trial.

Moreover, there was other evidence to convict defendant independent of his BAC. A person is also operating while intoxicated if the person is "under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance," or a combination thereof. MCL 257.625(1)(a). "'[U]nder the influence' effectively means that the defendant was 'substantially deprived of normal control or clarity of mind.'" *Bloomfield Twp v Kane*, 302 Mich App 170, 185 n 10; 839 NW2d 505 (2013), quoting *People v Raisanen*, 114 Mich App 840, 844; 319 NW2d 693 (1982). Defendant testified that he had three alcoholic drinks and that he took prescription drugs earlier on the day he was arrested. The bottle for one of the prescriptions warned not to consume alcohol while taking the drug. Smith testified that defendant's motorcycle was weaving in the road, that defendant stumbled or tripped twice after parking his motorcycle, that defendant made the worst attempt at reciting the alphabet that he's seen in his career, and that defendant said "3" when asked to pick a number between 19 and 21. This evidence shows that defendant was "substantially deprived of normal control or clarity of mind." Therefore, a different outcome upon retrial with defendant's newly discovered evidence is not probable.

In sum, defendant has failed to show that newly discovered evidence warrants a new trial in this case. *Cress*, 468 Mich at 692.

Affirmed.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien

-4-