*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

MICHAEL DEGRAFFENRIED,

        Defendant-Appellee.

UNPUBLISHED
June 05, 2026
1:25 PM

No. 377440
Wayne Circuit Court
LC No. 99-006691-01-FC

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the trial court's order granting relief from judgment in favor of defendant, Michael Degraffenried. Because the trial court did not apply the correct legal framework, and because the trial court's decision contained numerous factual and legal errors, we vacate the trial court's order and remand for further proceedings.[2]

---

[1] *People v Degraffenried*, unpublished order of the Court of Appeals, entered October 22, 2025 (Docket No. 377440).

[2] This is the second time in this case—and one of many occasions the past two calendar years—where this Court has sent a motion for relief for judgment back to this trial court for proper legal analysis or factual development. See *People v Degraffenried*, unpublished order of the Court of Appeals, entered December 22, 2021 (Docket No. 358624); *People v Crane*, unpublished order of the Court of Appeals, entered June 6, 2025 (Docket No. 375857); *People v Pittman*, unpublished order of the Court of Appeals, entered May 3, 2024 (Docket No. 369182); *People v Onumonu*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2024 (Docket No. 363065). A complete factual record and close adherence to the court rules are critical to avoid substantial costs in terms of both labor and time to this Court, but more importantly to the individuals involved in these cases.

## I. FACTS

On June 15, 1999, a drive-by shooting occurred outside a house on Florence Street in Inkster, Michigan. At the time, there was an ongoing conflict between two neighborhood groups. Alondrae Davis was killed, while Larry Abullah, Willie Wimberly, and Raymone Williams were reportedly wounded.

Degraffenried and his girlfriend, Tiya Manning, were arrested and charged with first-degree premeditated murder, MCL 750.316(a); two counts of assault with intent to commit murder, MCL 750.83; and felony-firearm, MCL 750.227b. At their preliminary examination, Manning's statement to police, in which she implicated Degraffenried and Williams as the shooters, was read into the record. Before trial, a *Walker*[3] hearing was held to determine the voluntariness of Manning's statement. The trial court suppressed her statement, and Manning's trial was severed from Degraffenried's. See *People v Manning*, 243 Mich App 615, 618-620; 624 NW2d 746 (2000).

At Degraffenried's trial in 2000, Broderick Ward and Abullah identified Degraffenried as the shooter. Degraffenried presented an alibi, insisting he was with his grandmother at the Inkster Police Department picking up his 16-year-old cousin. Multiple witnesses who had implicated Degraffenried as the shooter testified at trial that officers from the Inkster Police Department, including Detective Darian Williams, Detective Anthony Abdallah, and Detective Gregory Hill, threatened and coerced them into identifying Degraffenried. No physical evidence connected Degraffenried to the shooting. Degraffenried was convicted of second-degree murder, MCL 750.317; two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. This Court affirmed his convictions on direct appeal. See *People v Degraffenried*, unpublished per curiam opinion of the Court of Appeals, issued January 14, 2003 (Docket No. 228264).

In April 2017, Degraffenried moved for relief from judgment. In relevant part, Degraffenried argued that trial counsel was ineffective for failing to investigate and obtain the hospital records of the three individuals who were wounded, and that appellate counsel was ineffective for failing to raise this issue on appeal. Degraffenried also argued that he was denied a fair trial and due process because of police misconduct, supported by evidence of Detective Williams's 2002 federal extortion conviction, along with a 2007 newspaper article showing Detective Hill retired abruptly after lying under oath about his education. The trial court denied Degraffenried's motion without a hearing.

In July 2019, Wimberly executed an affidavit denying Degraffenried was the shooter. Wimberly is currently serving multiple life sentences for various offenses, including first-degree premeditated murder, MCL 750.316a, which occurred in January 2013. In his affidavit, Wimberly explained he knew Degraffenried at the time of the shooting and stated, "I saw the person who fired the shot that injured me, but I did not recognize his face." According to Wimberly, he told this information to Detective Williams while hospitalized and, during a later interview with

---

[3] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

Detective Williams and Detective Hill at Wimberly's home, he denied Degraffenried was the shooter. Wimberly explained he did not want to testify at Degraffenried's preliminary examination because he "was still traumatized from the shooting" and "was only 16 years old," but he ultimately did testify. In pertinent part, Wimberly was asked by the prosecutor whether certain people, including Degraffenried, were present outside the home at the time of shooting:

> *Q*. When you got there, were there other people out in front of that location?
>
> *A*. Yes.
>
> *Q*. And were those people Larry Abdullah, Curtis Abdullah, Earl Young, Valerie and LaKeisha Shelby, or LaKeisha and Tiffany Shelby, Alondre Davis, and Broderick Ward?
>
> *A*. Yes.
>
> *Q*. Were there any other people there?
>
> *A*. No.

Wimberly later discussed his testimony with his cousin, Ward, whom Wimberly did not recall seeing at the scene of the shooting. Nevertheless, Ward also testified and identified Degraffenried as the shooter. Wimberly stated: "I told Ward that was not true and he just shrugged his shoulders. I asked why he lied about [Degraffenried] being the shooter and he told me that he did not like [Degraffenried]." Wimberly was not called to testify at Degraffenried's trial and did not remember trial counsel contacting him at any point. Wimberly asserted he would have testified that, although he did not recognize the shooter, the shooter was not Degraffenried.

Degraffenried filed a successive motion for relief from judgment, attaching Wimberly's affidavit. Degraffenried raised four issues: (1) the prosecution committed a *Brady*[4] violation by failing to disclose Manning's "second police statements and testimony from her *Walker* Hearing regarding being coerced by Detective Williams to fabricate her statement;" (2) newly discovered evidence in the form of Wimberly's affidavit entitled Degraffenried to a new trial; (3) newly discovered evidence of "criminal misconduct of Inkster police officers who are alleged to have coerced and threatened four witnesses in this case" "severely undermined" the "soundness" of Degraffenried's convictions; and (4) trial counsel was unconstitutionally ineffective for failing to interview Wimberly, failing to call Wimberly as a witness at trial, and failing to confirm Williams was actually shot.

The trial court held an evidentiary hearing that included the testimony of Degraffenried, Wimberly, and Vicki Yost, the former Chief of Inkster Police, who now owned a professional investigation agency. During her investigation into Detective Williams, Yost discovered his federal extortion conviction. Yost also discovered Detective Abdallah was demoted during his tenure with the Inkster Police Department, but it was unclear why. Yost discovered Detective

---

[4] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

Abdallah "was involved in a couple lawsuits involving exonerees George Clark and Kevin Harrington who have just been exonerated by the Wayne County Prosecutor's Office[.]"

Wimberly denied that he lied during the preliminary examination when he confirmed Ward was present, explaining that he answered the prosecutor's compound question in the affirmative because *some* of the named individuals were present. Wimberly testified that he was just trying to get through his testimony because he was 16 years old and traumatized from being shot. He explained that he only offered more than a yes-or-no answer when required. According to Wimberly, Ward was not present at the time of the shooting, but had been at the house earlier, before leaving to obtain alcohol and marijuana.

Wimberly was in the ambulance while Davis was dying and was told on arrival at the hospital that he could have died too. At that point, Wimberly did not want anything to do with the case. Wimberly did not know everyone in the neighborhood and, although he did not recognize the shooter's face, he was nonetheless afraid of the unidentified individual. Wimberly did not want to be viewed as a "snitch," because there were repercussions for snitches in his neighborhood. The trial court granted Degraffenried's motion for relief from judgment. This appeal followed.

## II. STANDARD OF REVIEW

"A trial court's decision on a motion for relief from judgment is reviewed for an abuse of discretion." *People v Christian*, 510 Mich 52, 74; 987 NW2d 29 (2022). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. An abuse of discretion necessarily occurs when a trial court makes an error of law." *People v Oslund*, 516 Mich 49, 62; 33 NW3d 332 (2024) (quotation marks and citations omitted).

"A trial court's factual findings are reviewed for clear error." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018), citing MCR 2.613(C). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

The trial court necessarily abused its discretion by making an error of law when granting Degraffenried's successive motion for relief from judgment. *Oslund*, 516 Mich at 62. Motions for relief from judgment are governed by MCR 6.500 *et seq*. Generally, a defendant is "limited to 'one and only one motion for relief from judgment' with regard to a conviction." *People v Lemons*, 514 Mich 485, 514; 22 NW3d 42 (2024), quoting MCR 6.502(G)(1). However, MCR 6.502(G)(2) provides limited exceptions to this rule. In relevant part, a defendant "may file a second or subsequent motion" based on "a claim of new evidence that was not discovered before the first such motion was filed . . . ." MCR 6.502(G)(2)(b). The trial court may also "waive the provisions of this rule if it concludes that there is a significant possibility that the defendant is innocent of the crime." MCR 6.502(G).

"Upon satisfaction of the procedural threshold set forth in MCR 6.502(G), a defendant must then establish entitlement to relief under MCR 6.508." *People v Allen*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 373427); slip op at 3. Under MCR 6.508(D)(3), a court "may not grant relief to a defendant if the motion alleges grounds for relief that could have been

-4-

previously raised, unless the defendant demonstrates both good cause for failing to raise such grounds earlier as well as actual prejudice." *Johnson*, 502 Mich at 565.

> In order for a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*Id*. at 566, citing *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks omitted).]

"As our Supreme Court has explained, *Cress*'s first three prongs relate to the good-cause requirement of MCR 6.508(D)(3)(a), and the fourth prong relates to the actual-prejudice requirement of MCR 6.508(D)(3)(b)." *Allen*, ___ Mich App at ___; slip op at 3.

## A. THE PROCEDURAL THRESHOLD OF MCR 6.502(G)(2)

To establish that evidence is newly discovered, "a defendant need only demonstrate that the evidence in question 'was not discovered before' the defendant filed his or her first motion for relief from judgment." *Allen*, ___ Mich App at ___; slip op at 5.

First, the trial court properly determined Wimberly's affidavit was newly discovered. Wimberly executed his affidavit in 2019, and Degraffenried filed his first motion for relief from judgment in 2017. The prosecution does not claim Degraffenried discovered the information about Ward before filing his successive motion for relief from judgment. Because there is no indication this information existed before 2019, the affidavit clearly constitutes new evidence under MCR 6.502(G)(2). See *Allen*, ___ Mich App at ___; slip op at 7 (finding a 2019 affidavit that reiterated trial testimony but also included a recantation constituted new evidence under MCR 6.502(G)(2) because the new evidence "did not exist" until 2019).

As for Manning's *Walker* hearing testimony, the trial court likewise concluded that this evidence was new evidence for purposes of MCR 6.502(G)(2)(b). However, we cannot find support in the record for this conclusion. Again, to clear the procedural bar of MCR 6.502(G)(2)(b), a defendant must "make some offer of proof that the evidence in question 'was not discovered before' the defendant filed his or her first motion for relief from judgment." *Allen*, ___ Mich App at ___; slip op at 6. Degraffenried filed his first motion for relief from judgment in 2017. Manning's statement was discovered before then because, as discussed, it was read into the record at Degraffenried's 1999 preliminary examination. Indeed, Degraffenried refers to Manning's "coerced second statement" in his first motion for relief from judgment, citing to the preliminary examination transcript. Manning's second statement therefore does not appear to be newly discovered evidence under MCR 6.502(G)(2)(b).

The same is true for some[5] of Degraffenried's allegations of police misconduct. In his first motion for relief from judgment, Degraffenried attached multiple exhibits outlining Detective Williams's federal extortion conviction and Detective Hill's sudden retirement for lying under oath. Therefore, the trial court clearly erred by concluding that all the police misconduct evidence was not discovered before his first motion for relief from judgment was filed. MCR6.502 (G)(2)(b). See also MCR 6.508(D)(2) (explaining that a court may not grant relief if the motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding . . . "). However,

> a court is not precluded from considering previously decided claims in the context of a new claim for relief, such as in determining whether new evidence would make a different result probable on retrial or if the previously decided claims, when considered together with the new claim for relief, create a significant possibility of actual innocence[.] [MCR 6.508(D)(2).]

As a result, we vacate the trial court's findings and holding as to all evidence excepting the 2019 affidavit. We remand to consider the procedural hurdle anew as to the allegedly newly discovered evidence, again excepting the 2019 affidavit. Only once the procedural hurdle is met can the trial court then determine whether that same evidence can survive substantive review.

### B. MCR 6.508 AND THE *CRESS* FACTORS

### 1. REASONABLE DILIGENCE AND GOOD CAUSE

The trial court made legal errors in applying the *Cress* factors to the newly discovered evidence at issue here. Again, for a new trial to be granted on the basis of newly discovered evidence, a defendant must show "good cause for failure to raise such grounds on appeal or in the prior motion" and "actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3)(a) and (b). A defendant may demonstrate good cause by showing that he "could not, using reasonable diligence, have discovered and produced the evidence at trial." *Cress*, 468 Mich at 692. A defendant's duty to use reasonable diligence extends to both the discovery and *production* of evidence; therefore, "when a defendant is *aware* of evidence before trial, he or she is charged with the burden of using *reasonable diligence* to make that evidence available and produce it at trial." *People v Rao*, 491 Mich 271, 283; 815 NW2d 105 (2012).

---

[5] As for Degraffenried's new allegations of police misconduct, we note that, although these allegations may be sufficiently new to clear the procedural bar set forth in MCR 6.502(G)(2)(b), Degraffenried bears the additional burden of "establishing entitlement to the relief requested." *People v White*, 337 Mich App 558, 568; 977 NW2d 138 (2021), citing MCR 6.508(D). The prosecutor tries to foreclose this second layer of review by arguing that other cases involving Detectives Williams, Abdallah, and Hill, are unrelated, and that no evidence substantiating police misconduct occurred in Degraffenried's case. We take no position on this argument because the relevant personnel records have not yet been provided to the trial court. That information should be considered when deciding whether a different result would be probable at a retrial.

We generally agree with the trial court's analysis as to Wimberly's affidavit. This evidence was not cumulative, and the evidence itself appears to have been newly discovered. The prosecution asserts that, using even minimal diligence, Degraffenried could have explored at the time of trial Wimberly's claim that Degraffenried was not the individual Wimberly saw in the white car. Trial counsel declined to cross-examine Wimberly at the preliminary examination, and Wimberly denied being interviewed by trial counsel. According to Wimberly's affidavit, if he had been called to testify at trial and asked if Degraffenried shot him, he would have testified Degraffenried was not the shooter. It therefore appears that reasonable diligence on the part of trial counsel would have led to the discovery of this evidence and its production at trial.

However, Wimberly's affidavit also contained new claims regarding Ward, and Wimberly did not claim he would have testified about this new information. Further, both Wimberly's new testimony and his preliminary examination testimony indicate that he did not want to testify initially and that he was not a forthcoming witness. Wimberly and Ward were cousins, and Wimberly testified they were close. Notably, Wimberly provided the information contained in his affidavit only after Ward died. Regardless, the prosecution presents no argument that this information could reasonably have been discovered and *produced* at trial, and they do not assert Degraffenried was aware of this evidence. It appears on this record that Degraffenried could not have produced the evidence he now presents until 2019. Accordingly, Wimberly's new claims about Ward and Wimberly's initial unwillingness to testify would seem to constitute good cause under MCR 6.508(D)(3)(a) and satisfy the third *Cress* factor.

However, the other remaining pieces of alleged new evidence must first clear the procedural hurdle before the trial court can address the police misconduct and *Walker* hearing testimony substantively under MCR 6.508. We note that, if the additional evidence of police misconduct and prior *Walker* hearing testimony is newly discovered under MCR 6.502, then ineffective assistance of appellate counsel may, in place of the first three *Cress* factors, satisfy the "good cause" requirement of MCR 6.508(3)(a). *People v White*, 337 Mich App 558, 568-569; 977 NW2d 138 (2021). Notably, this good cause requirement is satisfied by proving ineffective assistance of *appellate* counsel. See *id*.

The trial court nonetheless found that *trial* counsel was unconstitutionally ineffective as counsel for failing to (1) investigate Degraffenried's alibi defense, (2) interview Wimberly, and (3) obtain ballistics tests. Because of this, the trial court concluded Degraffenried established good cause for failing to raise these claims previously. Even assuming the trial court was correct about the myriad ways Degraffenried's *trial* counsel was ineffective, that alone is insufficient at this late stage in the appellate process. The trial court was required to consider Degraffenried's direct appeal and his first motion for relief from judgment to assess whether these arguments were previously addressed and, if not, whether Degraffenried alleged ineffective assistance of *appellate* counsel. The trial court did not do so when determining good cause under MCR 6.508(D)(3)(a), and its failure to do so was clear error. The proper ineffective assistance of counsel analysis in the context of good cause is required on remand but, again, this should happen only if the evidence clears the procedural hurdle under MCR 6.502.

## 2. THE PROBABLE OUTCOME AND ACTUAL PREJUDICE

The trial court should only reach actual prejudice if the alleged new evidence clears the procedural hurdle under MCR 6.502 and advances past the "good cause" requirements under MCR 6.508 and the first three *Cress* factors. If the record clearly reflects that these two prerequisites are met, then "[w]hen analyzing actual prejudice under MCR 6.508(D)(3)(b) and the fourth *Cress* factor, the trial court must begin by determining whether the proffered evidence is credible." *Allen*, ___ Mich App at ___; slip op at 9.

> In making this assessment, the trial court should consider all relevant factors tending to either bolster or diminish the veracity of the witness's testimony. A trial court's function is limited when reviewing newly discovered evidence, as it is not the ultimate fact-finder . . . . In other words, a trial court's credibility determination is concerned with whether a *reasonable juror* could find the testimony credible on retrial. [*Johnson*, 502 Mich at 567 (citations omitted).]

A trial court should deny a defendant's motion for relief from judgment if the trial court determines that, because of the witness's lack of credibility, "*no* reasonable juror" would entertain a reasonable belief in the witness's veracity. *Id.* at 568. "However, if a witness is not patently incredible, a trial court's credibility determination must bear in mind what a reasonable juror might make of the testimony, and not what the trial court itself might decide, were it the ultimate fact-finder." *Id.*

As to the affidavit, which we agree meets both the procedural and good cause requirements, the trial court found Wimberly's testimony was credible because he had no reason to lie, was no longer 16 years old, and was serving two life sentences in an unrelated matter. But the trial court appears not to have properly analyzed the issue at hand. The trial court stated, "I believe that all of the testimony that I heard was true. Particularly I thought that Mr. Wimberly's testimony was credible because he had absolutely no reason at this juncture to lie." However, the trial court was required to determine "whether a *reasonable juror* could find the testimony credible on retrial." *Johnson*, 502 Mich at 567. The trial court found the jury should have "had the benefit of evaluating Mr. Wimberly's credibility," which is distinct from concluding a reasonable juror could find the testimony credible. As a result, we vacate the fourth prong of the *Cress* analysis as to the affidavit and on remand, the court shall faithfully apply this standard.

In assessing credibility on remand, the trial court should bear in mind that "[t]raditionally, courts have considered recantation evidence with suspicion." *People v Rogers*, 335 Mich App 172, 198; 966 NW2d 181 (2020). "As a rule, the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial." *Id.* (quotation marks and citation omitted). However, such testimony may not be deemed incredible merely because it is a recantation. *Allen*, ___ Mich App at ___; slip op at 10. "Rather, as with other newly discovered evidence, the trial court 'should consider all relevant factors tending to either bolster or diminish the veracity of the witness's testimony.' " *Id.* (citation omitted).

For example, the trial court could consider "the strength of the witness's original testimony, whether the record evidence supports the recantation, whether the recantation testimony is more credible than the witness's original testimony, and the importance of the witness's original testimony to the defendant's conviction." *Id.* "[W]hen evaluating a motion for new trial based on

newly discovered evidence, the court must consider the evidence admitted at the original trial and *all* of the *record* evidence that has come to light to-date that could be used at the retrial." *Rogers*, 335 Mich App at 197. "In examining whether this new evidence makes a different result probable on retrial, the trial court must consider the evidence that was previously introduced at trial." *Johnson*, 502 Mich at 571 (quotation marks and citation omitted). From some statements on the record below, the trial court appeared to lack clear understanding of the evidentiary landscape of Degraffenried's trial.[6] That must be remedied on remand.

## IV. CONCLUSION

We vacate the trial court's order granting Degraffenried's successive motion for relief from judgment and remand for further proceedings consistent with this opinion. We note that, only as to the Wimberly affidavit, the trial court for the most part correctly analyzed the evidence under MCR 6.502 and MCR 6.508 but fell short in applying the fourth prong of *Cress*. We cannot say the same about Manning's *Walker* hearing testimony or Degraffenried's newer allegations of police misconduct. For those pieces of evidence, the trial court must begin with the procedural hurdle set forth in MCR 6.502. It is critical to public trust and judicial efficacy that the trial court closely adhere to the court rules and review the full record on remand. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock

---

[6] The trial court found "there was absolutely no investigation of this case" by trial counsel, explaining trial counsel never investigated Degraffenried's alibi, never interviewed his alibi witnesses, and never obtained any ballistics tests. But the trial court's assessment of trial counsel's investigation was based exclusively on the testimony from the successive 6.500 hearing and ignores that Degraffenried's alibi was in fact presented at trial. Multiple witnesses testified at trial on behalf of Degraffenried, confirming his alibi. Trial counsel attempted to introduce an incident field report confirming Degraffenried's cousin was released to his grandmother, but it was denied. Further, trial counsel extensively questioned multiple Inkster police officers about the ballistics tests performed. When trial counsel moved for a directed verdict, he noted officers refused to give Degraffenried a ballistics test, and asserted a ballistics test was performed on at least one of the vehicles but was never provided. This is indicative of something more, and maybe significantly more, than "absolutely no investigation."