# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARRELLE BALLARD,

        Defendant-Appellant.

UNPUBLISHED
August 18, 2016

No. 325731
Wayne Circuit Court
LC No. 13-011131-FC

Before: MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, after a bench trial, of armed robbery, MCL 750.529, and the trial court's denial of his motion for a new trial. The trial court sentenced defendant to 27 months to 6 years' imprisonment. We reverse the trial court's denial of defendant's motion, vacate defendant's conviction, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from an armed robbery that occurred at a gas station in Detroit. After the gas station attendant and manager identified defendant as the masked robber, he was arrested and charged with armed robbery. At trial, the victim of the robbery, Glenn Belcher, and the gas station attendant, Taha Al-Rohimi (sometimes referred to in the record as "Al-Rohaimi"), identified defendant as the perpetrator.[1] Additionally, a surveillance video that captured the robbery was admitted into evidence at trial. The video showed that the robber had a limp. Based on the robber's limp as shown in the video, the gas station manager, Khalel Saad, who had not witnessed the robbery, also identified defendant as the robber depicted in the video. Defendant presented a mistaken identity defense at trial. Defendant, his ex-girlfriend, and his mother testified that defendant was home at the time of the robbery and that, while defendant had a limp due to a right leg amputation, his limp was different than the perpetrator's limp. No physical

---

[1] Al-Rohimi testified that defendant was a frequent customer of the gas station, that both defendant and the robber walked with a limp, and that the robber fled in the direction of defendant's home.

evidence was introduced linking defendant to the crime. The trial court found the eyewitness identifications to be credible, and found defendant guilty as charged.

After trial, defendant filed a motion for new trial, arguing that he was entitled to a new trial on several grounds, including that he was denied the effective assistance of counsel when trial counsel failed to use readily available evidence to impeach Belcher's and Al-Rohimi's identifications and failed to investigate and request a court-appointed expert on prosthetics and gait analysis. The trial court held an evidentiary hearing on defendant's motion. At the hearing, defendant's trial counsel admitted that he was either not aware that Belcher had failed to identify defendant as the robber in a live lineup conducted on the day of the robbery, or that he "may have simply forgot" to impeach Belcher with that evidence. Further, trial counsel did not seek to introduce a call to 911 made by Al-Rohimi, in which he had reported that two men had carried out the robbery, and he failed to impeach Al-Rohimi with this evidence. Trial counsel denied that either of these failures to impeach key witnesses were strategic decisions. Also at the hearing, defendant's appellate counsel offered the expert testimony of Wendy Beattie, an expert in the field of orthotics and prosthetics, who concluded that the perpetrator's gait was inconsistent with defendant's; Beattie in fact opined that the video showed that the perpetrator had an injury or weakness in his left leg, rather than (like defendant) in his right leg, and that it would be very difficult, if not impossible, for defendant to move in the manner in which the perpetrator moved in the video. Trial counsel admitted that he did not consider consulting an expert in gait analysis or prosthetics; however, he stated that in any event the trial court had denied him funds for retaining experts and that he "did not have the funds to get an expert."

After the hearing, the trial court found that trial counsel was not ineffective and denied defendant's motion for a new trial on all grounds. Regarding the issue of expert testimony, the court stated that it would not "have mattered if [defense counsel] had asked for the court appointed expert . . . the court was going to deny that motion to a defense attorney who is retained." Further, the court stated, "the trial defense attorney testified that he gave the defendant an option, a realistic option, you can release me as your retained attorney, you can get a court appointed attorney and then the judge is likely to give you an expert at public expense." Accordingly, the court found that defense counsel's failure to request an expert on gait analysis or prosthetics was not ineffective assistance. Further, the trial court found the testimony of the eyewitnesses to be credible despite the impeachment evidence, especially in light of the fact that the perpetrator had fled in the direction of defendant's house.

This appeal followed.

## II. STANDARD OF REVIEW

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Questions of constitutional law are reviewed de novo. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). However, "[a] judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." See *People v Grant*, 470 Mich 477, 484-485; 684 NW2d 686 (2004), citing *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). A trial court's findings of fact are reviewed for clear error. See *id*., citing

*LeBlanc*, 465 Mich at 579. "A finding is clearly erroneous when, although there is evidence to support it, [this Court], on the whole record, is left with a definite and firm conviction that a mistake has been made. See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), mod 481 Mich 1201 (2008). This Court reviews a trial court's decision to grant or deny a motion for new trial for an abuse of discretion, which occurs when the trial court renders a decision falling outside the range of principled decisions. See *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

## III. ANALYSIS

On appeal, defendant again argues that he was denied the effective assistance of counsel because trial counsel failed to use readily available evidence to impeach Belcher's and Al-Rohimi's identifications of defendant at trial, and failed to investigate, consult, or retain and expert on prosthetics or gait analysis. Further, defendant argues the trial court erred in holding otherwise, and abused its discretion in denying his motion for a new trial on that basis. We agree.

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694.

Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), remanded on other grounds 436 Mich 866 (1990). Counsel's strategic judgments are afforded deference, *Wiggins v Smith*, 539 US 510, 521-522, 528; 123 S Ct 2527; 156 L Ed 2d 471 (2003), but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation, *Wiggins*, 539 US at 521-522; *Trakhtenberg*, 493 Mich at 52-55.

Defendant first argues that he was denied the effective assistance of counsel when defense counsel failed to use readily available evidence to impeach Belcher's and Al-Rohimi's identifications of defendant at trial. We agree.

Counsel may provide ineffective assistance by unreasonably failing to develop the defendant's defense through adequate impeachment of the witnesses against the defendant. See *Trakhtenberg*, 493 Mich at 54-55. A witness can be impeached by the use of prior inconsistent statements, *People v Jenkins*, 450 Mich 249, 254; 537 NW2d 828 (1995), but the decision to question witnesses, and what questions to ask, are generally considered matters of trial strategy, see *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). In general, the failure to

question witnesses or to present other evidence constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *Id*. A defense is substantial if it might have made a difference in the outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

At trial, defendant presented a mistaken identity defense and attempted to impeach the eyewitness identifications by noting that the perpetrator had worn a mask, noting that Al-Rohimi had incorrectly testified that defendant's prosthetic was on his left leg and, after Belcher testified that he identified defendant by his eyes, noting that Belcher had not told the police that he had identified defendant by his eyes. However, the trial court found the identifications to be credible and persuasive in finding defendant guilty of the robbery. As stated above, trial counsel failed to introduce evidence of (1) Belcher's failure to identify defendant in a live lineup on the day of the robbery, and (2) a 911 audio in which Al-Rohimi failed to identify defendant during the robbery and instead stated that two men were robbing Belcher. This constituted strong impeachment evidence that was readily available but that counsel failed to use at trial. In examining whether that failure fell below an objective standard of reasonableness, defendant must overcome the strong presumption that his trial counsel's performance was the product of sound trial strategy. *Trakhtenberg*, 493 Mich at 52, citing *Strickland*, 466 US at 689. However, in this case, trial counsel explicitly admitted that his failure to introduce either piece of impeachment evidence was not trial strategy. Further, we can discern no strategic reason for defense counsel's failure to impeach the eyewitnesses whose testimony was a critical part of the prosecution's case.

Further, while trial counsel testified that he did not remember if he had obtained before trial the warrant request evidencing Belcher's failure to identify defendant at the lineup or the 911 audio in which Al-Rohimi also failed to identify defendant, he conceded that the prosecution had provided him with discovery, and that the evidence at issue was the type that is generally available through discovery. During trial, defense counsel also stated that the prosecution had been prompt in providing him with discovery and that it was possible that he had obtained the impeachment evidence and simply forgot to elicit the testimony during cross-examination. Accordingly, trial counsel was aware that the eyewitness identifications were central to the case and vulnerable to impeachment, and he was at least presumably in possession of the evidence[2] with which to effectively impeach the identifications; yet, he failed to do so. Accordingly, defense counsel's performance fell below an objective standard of reasonableness when he failed to impeach Belcher's and Al-Rohimi's identifications of defendant at trial using readily available evidence. *Trakhtenberg*, 493 Mich at 51; *Strickland*, 466 US at 694.

---

[2] Even if trial counsel was not in possession of both pieces of evidence, his performance in failing to obtain the impeachment evidence was objectively unreasonable. Counsel always retains the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52. In this case, the evidence at issue was the type generally included in discovery. Thus, if trial counsel did not have the evidence at issue, his error was the failure to exercise reasonable professional judgment in conducting an investigation of the case in the first instance.

Further, we conclude that defendant has also demonstrated the requisite level of prejudice. The only evidence at trial linking defendant to the robbery were the identifications by Belcher, Al-Rohimi, and Saad (who was not present during the robbery and whose identification was based on the robber's limp as depicted in the video), the fact that the robber fled in the direction of defendant's home after the robbery, and the surveillance video showing a masked man with a limp. Before announcing the verdict, the trial court explicitly stated that the witness identifications "work[ed] very strongly against defendant." Thus, Belcher's and Al-Rohimi's credibility was of paramount importance in this case. And although the impeachment evidence at issue is additional impeachment evidence, it would not have been merely cumulative. Rather, the fact that Belcher failed to identify defendant in a live lineup on the day of the robbery and that Al-Rohimi originally told the 911 operator that two men were robbing Belcher constituted impeachment evidence that would have further called into question Belcher's and Al-Rohimi's credibility and could have made a difference at trial. Because the trial court indicated that the witnesses' identifications were a weighty factor in determining defendant's guilt, the impeachment evidence at issue is significant enough to show that counsel's failure to elicit it at trial deprived defendant of a substantial defense, i.e., one that could have made a difference in the outcome of the trial. See *Chapo*, 283 Mich App at 371. Accordingly, there exists a reasonable probability that this additional impeachment evidence " 'would have tipped the scales in favor of finding a reasonable doubt about defendant's guilt,' " *Trakhtenberg*, 493 Mich at 57, quoting *People v Armstrong*, 490 Mich 281, 292; 806 NW2d 676 (2011).

Defendant also offered two additional pieces of evidence on appeal that serve to further buttress the impeachment evidence offered at the evidentiary hearing. After the evidentiary hearing, appellate counsel obtained two police reports pertaining to this case, and the parties stipulated to expand the record on appeal "so as to allow this Court to consider this recently obtained information."[3] The first report revealed not only that Belcher had failed to identify defendant at the live lineup on the day of the robbery, but that he actually identified someone else at that time. The second report confirmed that, in addition to telling the 911 dispatcher that two men were robbing Belcher, Al-Rohimi originally also told the police that he had seen two men rob Belcher. This evidence makes it less likely that when Al-Rohimi told the 911 dispatcher that two men were robbing Belcher, it was simply the product of his difficulty with the English language (as was suggested by the prosecution at the evidentiary hearing). This additional impeachment evidence supports our conclusion that counsel's failure to elicit it (and the other impeachment evidence discussed above) at trial deprived defendant of a substantial defense, i.e., one that could have made a difference in the outcome of the trial. See *Chapo*, 283 Mich App at 371.

---

[3] A party may generally not expand the record on appeal. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). However, this Court may, "in its discretion, and on the terms it deems just . . . permit amendments, corrections, or additions to the transcript or record." In light of the parties' stipulation, we exercise our discretion to permit this addition to the record rather than remand to allow the record to be supplemented below. See MCR 7.216(A)(5) and (7).

Second, defendant argues that he was denied the effective assistance of counsel when trial counsel failed to investigate, consult, retain, or request a court-appointed expert witness in prosthetics or gait analysis. We agree.

Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and the failure to call a supporting witness does not necessarily amount to ineffective assistance of counsel, *People v Beard*, 459 Mich 918, 919; 589 NW2d 774 (1998). However, "[t]o provide effective assistance of counsel, defense counsel not only must consult with experts when doing so 'would have revealed [the] weaknesses of the prosecution's case,' but also must consult with experts when an expert analysis, as part of the investigatory process, is likely to develop evidence favorable to the defendant." *People v Williams*, 495 Mich 955, 957; 843 NW2d 551 (2014), quoting *Trakhtenberg*, 493 Mich at 53. The failure to call witnesses constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one that might have made a difference in the outcome of the trial. *People v Marshall*, 298 Mich App 607, 612; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013).

At the beginning of trial, trial counsel requested an adjournment to investigate whether defendant could retain an expert in video analysis. Defense counsel eventually concluded that defendant would not retain a video analysis expert as defendant "has not been able to secure funds." The trial court entered an order denying defendant's motion for a court-appointed expert, and the trial court later stated that it would have denied any motion by the defense to appoint an expert because trial counsel was retained, and therefore, defendant was not indigent. At the evidentiary hearing, the prosecution argued that because the trial court "entered an order denying funds for the appointment of an expert witness," any defense motion on that basis would have been fruitless, and therefore defense counsel's failure to make a motion for the appointment of an expert in prosthetics did not fall below an objective standard of reasonableness. However, the prosecution's argument assumes that trial counsel would have needed court appointed funds to retain such an expert. Further, while trial counsel's failure to request a court-appointed expert may not have fallen below an objective standard of reasonableness, his complete failure to investigate or consult with an expert in prosthetics or gait analysis did.

Trial counsel conceded that "[defendant]'s gait related or compared to the gait of the perpetrator as seen in the surveillance video was a pivotal issue in the trial," but admitted that he did not consider consulting with an expert in prosthetics or gait analysis and that he did not do "any searching for a gait expert or anything of that nature." Accordingly, trial counsel did not even investigate whether an expert such a Beattie would have been able to offer consultation or exculpatory testimony on defendant's behalf at trial. Instead, trial counsel failed to investigate or consult with such an expert, and did not otherwise educate himself or conduct any independent investigation of the prosthetics/gait issue that was central to the case. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 690-691; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (finding defense counsel performed deficiently by failing to investigate and attempt to secure an expert witness who could both testify in support of the defendant's theory and prepare counsel to counter the prosecution's theory of the case); and *Trakhtenberg*, 493 Mich at 54 n 9 (noting that "a defense attorney may be deemed ineffective, in

part, for failing to consult an expert when counsel had neither the education nor the experience necessary to evaluate the evidence and make for himself a reasonable, informed determination as to whether an expert should be consulted or called to the stand . . . ."). Accordingly, trial counsel's failure to investigate or consult with an expert in prosthetics or gait analysis did not constitute reasonable trial strategy, and fell below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 51; *Strickland*, 466 US at 694.

Further, defendant can demonstrate prejudice. Defendant's conviction turned in part on the comparison between the perpetrator's gait and defendant's gait. While defendant, his ex-girlfriend, and mother all testified at trial that the perpetrator's limp did not match defendant's, their lay opinion was unlikely to effectively counter the eyewitnesses identifications. Further, Beattie testified several times at the evidentiary hearing that while defendant had suffered a right leg amputation, the video reflected that the robber's injury or weakness was to his left leg, and that it would be very difficult, if not impossible, for defendant to move in the same manner as did the perpetrator. Accordingly, expert assistance was available and would have provided the court with a viable and impartial perspective on the facts of the case while contradicting the eyewitness identifications. The trial court in fact noted at trial that as "a lay person and the trier of fact here" it was unable to determine from the video which leg was the weakened or injured leg that caused the limp.[4] Because the comparison between the perpetrator's gait and defendant's gait was central to this case, the expert testimony at issue is significant enough to show that counsel's failure to investigate, consult, or retain an expert in that field deprived defendant of a substantial defense. See *Chapo*, 283 Mich App at 371. Accordingly, there exists a reasonable probability that the expert testimony " 'would have tipped the scales in favor of finding a reasonable doubt about defendant's guilt,' " *Trakhtenberg*, 493 Mich at 57, quoting *Armstrong*, 490 Mich at 292.

In sum, Belcher and Al-Rohimi were the only eyewitnesses to the crime and their credibility was crucial to the outcome of the case. Thus, defense counsel's performance fell below an objective standard of reasonableness when he failed to utilize readily available evidence to impeach their identifications of defendant at trial. Additionally, the trial court indicated that their identifications were a weighty factor in determining defendant's guilt. Consequently, the impeachment evidence at issue was significant enough to show that counsel's failure to elicit it at trial deprived defendant of a substantial defense. The comparison between the perpetrator's gait and defendant's gait was also central to this case, and therefore, trial counsel's complete failure to investigate, consult, or retain an expert on prosthetics or gait analysis was objectively unreasonable. Further, because (as the trial court stated) it was difficult for a layperson to make an adequate comparison between the perpetrator's limp and defendant's

---

[4] We note that the trial court stated at the evidentiary hearing that Beattie's testimony did not change its mind. However, we conclude that defendant can satisfy the prejudice requirement, as expert testimony may well have altered the trial court's conclusion if presented in the context of a criminal trial, rather than a motion for a new trial. Further, consultation with an expert may have enabled trial counsel to more effectively present a defense of mistaken identity by enabling counsel to highlight differences in the gait of the perpetrator and defendant more effectively.

limp, the expert testimony at issue is significant enough to show that counsel's failure to investigate, consult with, or retain an expert in that field deprived defendant of a substantial defense. Accordingly, defendant was denied the effective assistance of counsel, and the trial court therefore abused its discretion in denying defendant's motion for new trial. See *Rao*, 491 Mich at 279. Because we reverse the trial court on this basis, we decline to address defendant's additional arguments concerning actual innocence or entitlement to a new trial under MCL 770.1.

We reverse the trial court's denial of defendant's motion for a new trial, vacate defendant's conviction, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra