# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ZANNIE CHRISTOPHER RUCKES,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2016

No. 328248
Wayne Circuit Court
LC No. 14-003836-FC

Before: GADOLA, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, carrying a dangerous weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a second habitual offender, MCL 769.10, to concurrent terms of 16 to 30 years' imprisonment for the AWIM conviction, and two to five years' imprisonment for the carrying a dangerous weapon with unlawful intent conviction, to be served consecutively to the mandatory two-year term of imprisonment for felony-firearm. We affirm.

## I. BACKGROUND FACTS

This case arises from the shooting of Kenneth Patterson in front of his home in Detroit, Michigan, on April 21, 2014. According to Patterson, on the night of the shooting, defendant, a longtime friend of Patterson's, drove up in front of Patterson's house in a white conversion van. Patterson testified that defendant told him he "should count [his] blessings," multiple times, to which Patterson responded, "[A]ll this because I stepped on your carpet, man?" Patterson was incredulous that defendant was making an issue of an incident on April 18, 2014, during which Patterson stepped on defendant's carpet with his boots on. Patterson claimed that, shortly thereafter, someone he did not recognize got out of defendant's van, aimed what appeared to be a rifle at Patterson, and shot him eight times. Patterson's girlfriend, Katrina Roper, was present during the shooting and testified that defendant drove his white conversion van in front of Patterson's home and told Patterson to "count [his] blessings." Roper explained that someone then got out of the van holding a long gun and started shooting. She further testified that shortly after the shooting began, she heard defendant, who was still in his van, say, "5-0, 5-0."

Detroit Police Officers Lemuel Sims and Joseph Walker testified that they conducted a traffic stop of defendant's white conversion van less than half a block away from the location of

-1-

the shooting after they heard gunshots nearby and saw the van pulling away. Sims testified that he saw a live bullet on the front passenger seat of defendant's van that appeared to be a rifle round, and Walker testified that he saw a bullet, which he described as "a full metal jacket, the kind you put in a rifle," behind the driver's seat. Sims testified that, at the time of the traffic stop, defendant was alone in the vehicle and appeared nervous. While the officers were investigating defendant, they received a call over the radio informing them of the shooting at Patterson's home. Defendant was subsequently arrested and his van was impounded.

Defendant testified on his own behalf at trial. He denied having an argument with Patterson regarding Patterson walking on his carpet, or having any dispute with Patterson in the days before the shooting. Although defendant agreed that he drove past Patterson's home on the night of the shooting on his way to get food, he denied stopping at Patterson's house, seeing Patterson, or telling Patterson to "count [his] blessings." He also denied that anyone exited his van and shot a firearm at Patterson. Defendant explained that the police pulled him over because he was playing loud music in his van and had a television set that he was watching while driving. He said the police asked him to step out of his van after he told them he did not have a driver's license. He denied having any bullets in his van.

The jury ultimately convicted defendant of the counts outlined above.[1] Following trial, defendant moved for a new trial, raising allegations of ineffective assistance of counsel and improper suppression of evidence by the prosecution. The trial court denied defendant's motion.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that the trial court erred by concluding that he received the effective assistance of counsel at trial. Ineffective assistance claims present mixed questions of fact and constitutional law; we review for clear error a trial court's factual findings and review de novo constitutional questions. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's findings are clearly erroneous if we are left with a definite and firm conviction that the trial court made a mistake. *People v Shaw*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 313786); slip op at 1. We review for an abuse of discretion a trial court's decision on a motion seeking a new trial. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). An abuse of discretion occurs if the trial court makes a decision that falls outside the range of principled outcomes. *Id*.

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's

---

[1] At the close of the prosecution's case, defendant moved for a directed verdict on all counts. The trial court granted defendant's motion with regard to dual conspiracy counts, observing that the prosecution did not produce evidence of an agreement between defendant and the unidentified shooter. The jury also acquitted defendant of a count of possessing a loaded firearm in a vehicle, MCL 750.227c.

assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations omitted).]

"This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant first argues that his trial counsel provided ineffective assistance because he failed to investigate and call defendant's fiancée, Ellisha Wilson, and an unidentified neighbor to corroborate defendant's testimony that he and Patterson were not involved in an argument on April 18, 2014, and that defendant therefore had no motive to attack Patterson. We disagree.

Decisions regarding what evidence to present and whether to call a witness are presumed to be matters of trial strategy. *People v Solloway*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 324559); slip op at 7. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Russell*, 297 Mich App at 716 (quotation marks and citation omitted). Similarly, failure to adequately investigate a case only constitutes ineffective assistance of counsel if it undermines confidence in the trial's outcome. *Id.*

After reviewing the record, we are not convinced that defense counsel's actions fell below an objective standard of reasonableness. At the evidentiary hearing on defendant's motion for a new trial, defense counsel stated that he never questioned Wilson about her presence at defendant's home on April 18, 2014, but said that he did not do so because "[n]o one brought it up to me that she was present or . . . that she even knew about it," despite his numerous discussions with defendant and Wilson. Defense counsel explained that he focused his attention on the events of the shooting on April 21, 2014, noting that the prosecutor was not required to prove anything regarding the alleged events of April 18, 2014. Defense counsel stated that when the events of April 18, 2014, came to light during trial, he decided not to call Wilson because she had been observing the trial and there was a mutual sequestration order in place. Moreover, the primary defense theory was one of mistaken identity. Specifically, defendant argued that he was not present during the shooting and that he was only coincidentally in the area because he was picking up food. Defense counsel vigorously questioned Patterson, Roper, Sims, and Walker to that end. Although it was not necessary to resolve the issue of whether defendant and Patterson argued on April 18, 2014, to support the defense theory of the case, defense counsel nonetheless extensively questioned Patterson and Roper about the events of April 18, 2014.

Although defendant suggests that Wilson could have corroborated his testimony that he and Patterson did not argue on April 18, 2014, her lack of testimony did not deny defendant a substantial defense because he himself testified regarding his version of events on April 18, 2014, and he was able to present his defense that he did not have a motive for shooting Patterson. Therefore, defendant has not shown that counsel's failure to call Wilson constituted ineffective assistance. See *Russell*, 297 Mich App at 716. Further, regarding defendant's neighbor, defendant has failed to identify the neighbor and failed to offer any evidence regarding the neighbor's alleged testimony, either below or on appeal. Accordingly, defendant has not

established the factual predicate of his ineffective assistance claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant also argues that his trial counsel provided ineffective assistance by failing to obtain Patterson's medical records to determine if they contained exculpatory or impeaching evidence. However, it appears from the record that defense counsel indeed possessed the records. Moreover, defendant offers nothing to show that the records in fact contained exculpatory or impeaching evidence, thus again failing to establish the factual predicate of his ineffective assistance claim. *Hoag*, 460 Mich at 6.

It is worth noting that defense counsel won a directed verdict on two of the counts against defendant, and an acquittal on a third count. But even assuming that trial counsel's performance fell below an objective standard of reasonableness, defendant cannot show that any of counsel's alleged deficiencies likely affected the outcome or reliability of the trial. Roper and Patterson clearly testified that defendant was present at the shooting and drove the van that carried the assailant who fired at Patterson. Defendant was heard making multiple threats to Patterson before the shooting, and Sims and Walker apprehended defendant near the scene of the shooting just moments after it occurred. In light of the significant evidence establishing defendant as one of Patterson's assailants, defendant cannot show prejudice resulting from counsel's performance at trial.

## III. SUPPRESSION OF EVIDENCE

Defendant next argues that his due process rights were violated because the prosecutor improperly suppressed evidence of the bullet seen by Wilson and Sims on the night of the shooting and because the police failed to preserve the bullet as evidence. Defendant asserts that he was thus unable to inspect the bullet or compare it to any bullet removed from the victim. We review de novo a defendant's claims regarding constitutional due process violations. *People v Richards*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 325192); slip op at 8.

It is well-established that a defendant has no general constitutional right to discovery in a criminal case. *People v Bosca*, 310 Mich App 1, 27; 871 NW2d 307 (2015). However, "a defendant's right to due process may be violated by the prosecution's failure to produce exculpatory evidence in its possession." *Id.* In *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." There are three elements of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Stated another way, "a *Brady* violation occurs when the prosecution has suppressed material evidence that is favorable to the accused. Under those circumstances, bad faith is not required for a *Brady* violation." *Bosca*, 310 Mich App at 28 (citations omitted). To meet the threshold of materiality, a defendant must show "that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *People v Stokes*, 312 Mich App 181, 190; 877 NW2d 752 (2015).

To warrant reversal on a claimed due process violation involving the failure to preserve evidence, a defendant must prove that the missing evidence *was exculpatory* or that law enforcement personnel acted in bad faith. . . . [W]hen the evidence is only "potentially useful" failure to preserve the evidence does not amount to a due process violation unless bad faith can be shown. A defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith. [*Richards*, ___ Mich App at ___; slip op at 8 (quotation marks, citations, and brackets omitted).]

Defendant first argues that the prosecution violated his right to due process by failing to produce the bullet found in his van and failing to inform defense counsel about the existence of the bullet. We disagree. Defendant has not presented any evidence showing that the bullet observed by the police officers in his van would have been exculpatory or impeaching of the prosecution's witnesses. Additionally, defendant's argument, that if the bullet had been disclosed to the defense the result of his trial would have been different, is not persuasive. The prosecution presented the testimony of both Patterson and Roper, who identified defendant as the driver of the van carrying the assailant who shot Patterson multiple times. Sims and Walker both testified that they apprehended defendant a short distance from the shooting only minutes after it occurred. On this record, there is no basis to conclude that the bullet would have been favorable to defendant and we are unable to conclude that the introduction of the bullet at trial would have led to a different result in defendant's case.

Next, defendant asserts that his right to due process was violated by the failure of the police to preserve the bullet. We again disagree. Defendant has not presented any evidence showing that the bullet was exculpatory, and even if the bullet was "potentially useful" to defendant's case, he has not demonstrated that the failure to preserve the evidence was undertaken in bad faith. Rather, the trial record suggests that such failure was inadvertent. Accordingly, defendant is not entitled to relief on his due process claims.[2]

## IV. RESENTENCING

---

[2] On this issue, defendant also argues that his trial counsel was ineffective for failing to object to the officers' testimony concerning the bullet or to move for a mistrial. Generally, decisions regarding whether to raise an objection are considered matters of trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Although defense counsel did not object to the testimony about the bullet observed by the police in defendant's van, he vigorously cross-examined Sims, Walker, and Investigator Glenda Fisher about the police handling of the bullet and how Walker's and Sims's police reports did not mention the bullet. Under the circumstances, defendant has not shown that counsel's treatment of the testimony was objectively unreasonable. Moreover, even if counsel's actions were unreasonable, defendant cannot demonstrate a reasonable likelihood that the outcome of the trial would have been different if counsel objected to the officers' testimony about the bullet or moved for a mistrial, in light of the significant evidence identifying defendant as the driver of the van that carried the assailant who shot Patterson.

Finally, defendant argues that he is entitled to resentencing because the trial court improperly scored offense variable (OV) 6, and because, pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the trial court engaged in impermissible judicial-fact finding in rendering his sentence. Regarding defendant's challenge to the scoring of OV 6, defense counsel explicitly agreed at defendant's sentencing hearing that the points assigned under this OV were correct. Accordingly, the issue is waived on appeal and we will not address it. *People v Hershey*, 303 Mich App 330, 351-352; 844 NW2d 127 (2013). Further, defendant did not raise an argument concerning impermissible judicial fact-finding below, rendering his *Lockridge* challenge unpreserved on appeal. We review for plain error a defendant's unpreserved challenge to his or her sentence on the basis that impermissible judicial fact-finding increased the minimum sentencing range recommended by the sentencing guidelines. *People v Steanhouse*, 313 Mich App 1, 42; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016).

In *Lockridge*, 498 Mich at 364, our Supreme Court concluded that Michigan's sentencing guidelines violated the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), to the extent that they required judicial fact-finding beyond facts admitted by the defendant or necessarily found by the jury to establish a defendant's minimum sentence. To remedy the constitutional infirmity, the Court severed MCL 769.34(2) "to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory," and held that a guidelines minimum sentencing range calculated in violation of *Apprendi* and *Alleyne* is advisory only. *Lockridge*, 498 Mich at 364-365. To preserve the Legislature's intent in enacting the guidelines, however, a sentencing court must still determine the applicable guidelines range and consider it when imposing a sentence. *Id.* at 365.

"[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* at 395. Once a defendant makes this showing, pursuant to *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), on remand a trial court must "determine whether [it] would have imposed a materially different sentence but for the constitutional error." *Lockridge*, 498 Mich at 397. "If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id.*[3]

To assess whether defendant's guidelines minimum sentencing range was actually constrained by the violation of the Sixth Amendment, we must first determine whether the facts admitted by defendant or necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for []defendant's score to fall in the cell of the sentencing grid

---

[3] Trial courts considering a case on a *Crosby* remand must follow certain procedures set forth in *Lockridge*, including allowing the defendant an opportunity to avoid resentencing and considering only the circumstances that existed at the time of the original sentencing when determining whether it would have imposed a materially different sentence. *Id.* at 398.

under which [he] was sentenced." *People v Jackson* (*On Reconsideration*), ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 322350); slip op at 12 (quotation marks and citation omitted). In this case, defendant was sentenced as a second habitual offender, MCL 769.10, and was assessed an OV score of 110 and a prior record variable score of 32, placing him in the D-VI cell of the Class A sentencing grid. MCL 777.62. Accordingly, defendant's minimum sentencing range was 171 months to 356 months. See MCL 777.21(3)(a). His sentence was not subject to an upward departure. The trial court assessed 50 points for OV 6, concluding that defendant "had premeditated intent to kill," MCL 777.36(1)(a), but this fact was not admitted by defendant or necessarily found by the jury, given that defendant was convicted of AWIM, MCL 750.83, carrying a dangerous weapon with unlawful intent, MCL 750.226, and felony-firearm, MCL 750.227b, none of which contain an element of premeditation. Without the 50 point assessment for OV 6, defendant would have been placed in the D-IV cell of the Class A sentencing grid. MCL 777.62. Consequently, defendant has established that his guidelines minimum range was "actually constrained by the violation of the Sixth Amendment," and he is therefore entitled to a *Crosby* remand. *Lockridge*, 498 Mich at 395.

We affirm defendant's convictions but remand for possible resentencing in accordance with *Lockridge*. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens