# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 2, 2018

Plaintiff-Appellee,

v

No. 335426
Wayne Circuit Court
LC No. 16-004981-01-FH

CHRISTOPHER PAUL SAUL,

Defendant-Appellant.

Before: SERVITTO, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Following a bench trial, the trial court convicted Christopher Saul of third-degree fleeing and eluding, MCL 257.602a(3), and sentenced him to one year of nonreporting probation with 80 hours of community service. Saul sought a new trial or to reopen the proofs based on new found evidence that he suffered from an autism spectrum disorder that explained his behavior during his police encounter. He also asks this Court to remand for an evidentiary hearing concerning new evidence that the arresting officer did not follow protocol and had motive to lie. We affirm.

## I. BACKGROUND

On March 10, 2016, Taylor Police Officer Brian Wojtowicz, who was patrolling in a fully marked police vehicle, pulled over 19-year-old Saul for driving 45 miles an hour in a 35 zone. Saul pulled over, but the street was busy with traffic and did not have shoulders. Wojtowicz honked his horn several times in an attempt to communicate that he wanted Saul to pull his vehicle out of the road and into a nearby driveway. After approximately five seconds, Saul slowly moved his vehicle forward. He drove for two miles as Officer Wojtowicz followed directly behind him, with emergency lights and siren still activated. At that point, backup arrived and surrounded Saul's vehicle. Saul was then taken into custody.

At trial, Saul testified that he understood that when a driver hears an emergency vehicle siren, he is "supposed to stop for the police," pull over to the side of the road, and remain stationary until the emergency vehicle passes. Saul explained that he did not comply because he was confused when the officer honked his horn. Saul interpreted the honking to mean that he should not have stopped his car at all, and that the officer wanted him to move "out of his way and keep going." When the officer honked his horn again after Saul moved forward, Saul thought that "maybe he wanted me to move maybe he wanted me to pull into that driveway there. I wasn't sure." Saul was also confused by a siren sound that he had never heard before.

-1-

In addition to the "traditional siren" sound, he also heard a series of fast beeping sounds. Although Saul drove past many parking lot entrances, driveways, and side streets with Officer Wojtowicz following immediately behind him with his lights and siren activated, it "never occurred" to Saul to pull into any of them.

At the trial, the court also heard testimony from Officer Wojtowicz and viewed the dash cam footage of the entire transaction. The trial court noted that "minimal circumstantial evidence is sufficient to establish defendant's state of mind" under the statute and that "fleeing and eluding is a general intent crime and only requires the intent to do the physical act" of fleeing and eluding. The court found, based on the testimony and video evidence, that Saul knew the officer was following him and directing him to stop. The court also found sufficient evidence that Saul "did more than simply fail to submit," because there were "several places where [he] could have pulled off the road," and he "did not voluntarily stop for the officer but only stopped because another police officer's vehicle stopped his car." The court therefore found Saul guilty of one count of third-degree fleeing and eluding.

At the sentencing hearing, the court heard Saul's motion for a new trial under MCR 6.431(B) and to reopen proofs under MCR 6.431(C), or in the alternative, to vacate his conviction and enter an order convicting Saul "of a cognate lesser offense . . . [of] resisting and obstructing." In support of his motion, Saul offered testimony from psychologist Carissa Gaden, who would testify that she evaluated Saul and found "him to be very high functioning, but still on the autism spectrum," which could "explain the genuine confusion" he experienced during the traffic stop and pursuit in this case. The court ultimately denied the motion.

Saul filed a claim of appeal and moved this Court to remand for a hearing requesting a new trial, asserting newly discovered evidence in the form of two expert witnesses—psychiatrist Andrew David Maltz and Thomas C. Berry, a former Detroit Police officer with 45 years of law enforcement experience who would testify that Wotjtowicz should have used his loudspeaker to instruct Saul. Saul also offered newly discovered evidence of Officer Wojtowicz's involvement in several lawsuits concerning "allegations of police misconduct and/or excessive force," as well as evidence that Wojtowicz was the "subject of an internal affairs investigation." This Court denied Saul's motion. *People v Saul*, unpublished order of the Court of Appeals, entered July 14, 2017 (Docket No. 335426).

## II. NEW TRIAL

We review for an abuse of discretion a trial court's decision on a motion for new trial. *People v Lemmon*, 456 Mich 625, 648 n 27; 576 NW2d 129 (1998). An abuse of discretion occurs when the court's decision "falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). To warrant a new trial based on newly discovered evidence, a defendant must show that "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).

The evidence presented by Saul in his trial court motion for a new trial, and his remand request in this Court, either was not "newly discovered" or could have been discovered before trial "using reasonable diligence." " '[M]otions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor. . . .' " *People v Rao*, 491 Mich 271, 279-280; 815 NW2d 105 (2012), quoting *Webert v Maser*, 247 Mich 245, 256; 225 NW 635 (1929). "[I]n fairness to both parties and the overall justice system, the law requires that parties secure evidence and prepare for trial with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case." *Rao*, 491 Mich at 280. To that end, "[i]t is the obligation of the parties to undertake all reasonable efforts to marshal *all* the relevant evidence for that trial. Evidence will not ordinarily be allowed in installments." *Id.* (emphasis in original).

Evidence that Saul was on the autism spectrum could have been uncovered with reasonable diligence before trial. Saul conceded below that prior to trial, "obviously there were some . . . potentially, some indicators that" he may have had a "more expansive, a more significant mental health issue," but that he did not investigate this issue until after his conviction. The trial court noted that defendant's "challenges" were known to him and his family before the trial. Saul was assessed "by a neurologist, endocrinologist, and nutritionist in his early years," and had been prescribed Adderall since the fourth grade. With reasonable diligence, Saul could have investigated his potential mental health issues, and could have discovered his autism disorder prior to trial. Accordingly, Dr. Gaden's assessment was an insufficient ground for the trial court to grant a new trial. And Dr. Maltz's potential expert testimony does not warrant a remand for reconsideration of the lower court's decision.

Saul also could have earlier developed evidence regarding the proper procedure to notify a car to move to a safer location during a traffic stop. Even if Saul's counsel was unaware of the circumstances previously, he was notified by the officer's testimony at the June 1, 2016 preliminary hearing that the officer had honked at Saul in an attempt to communicate his intent that Saul should pull over in a safer location. Saul had ample time to investigate whether this was proper procedure. Instead, Saul waited until his June 16, 2017 motion to remand filed in this Court to suggest an expert who would challenge Officer Wojtowicz's methods. Again, this evidence could have been developed prior to trial and we decline to remand for a new evidentiary hearing on this basis.

Finally, Saul contends for the first time on appeal that newly discovered evidence of Officer Wojtowicz's less than stellar service record warrants at least a remand for reconsideration of his motion for a new trial. Appellate counsel's paralegal discovered information "[d]uring the course of a routine internet search" that Officer Wojtowicz "was involved in many lawsuits concerning acts of misconduct against him" and had been "the subject of an internal affairs investigation." In his motion to remand to take a second bite at his new trial motion, Saul contended that he required additional discovery from the prosecutor to develop this evidence into a claim that Wojtowicz was motivated to make himself look better in the current situation and falsely accuse Saul of fleeing and eluding, rather than admitting he employed confusing and unclear techniques that could have been misinterpreted.

However, with reasonable diligence, Saul and his counsel could have questioned the appropriateness of the officer's actions before trial. The "routine internet search" could have

been conducted at any time with reasonable diligence, including before trial. Although we sympathize with Saul's plight, he simply has not presented any newly discovered evidence that warrants a new trial.

## III. ASSISTANCE OF COUNSEL

Saul further asserts that his trial counsel was ineffective in failing to investigate his mental condition and its impact on his actions before trial. Although attorneys are protected by the strong presumption that their decisions are "born from a sound trial strategy," they have a duty to formulate that strategy after "reasonable investigation[]" or after making "a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). It would only have been reasonable for defense counsel in this case to investigate Saul's competency if his client or his client's parents brought this issue to the attorney's attention. There is no record indication that Saul's attorney should have suspected that his client was on the autism spectrum and could not process environmental cues during the traffic stop. Indeed, despite previous childhood assessments, no one had diagnosed Saul with autism spectrum or Asperger's disorder before this incident. Accordingly, Saul cannot establish that counsel acted deficiently.

We affirm.

/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens