*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 10, 2021

Plaintiff-Appellee,

v

No. 352058
Newaygo Circuit Court
LC No. 18-012024-FH

BRET ANTHONY STRIEGLE,

Defendant-Appellant.

Before: BOONSTRA, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of breaking and entering with intent to commit a felony, MCL 750.110, and unlawful driving away of an automobile (UDAA), MCL 750.413. The trial court sentenced defendant to concurrent sentences of six months in jail for both convictions, with credit for one day served, as well as 18 months' probation. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On December 4, 2016, Scott Thompson (Scott), the owner of Ashland Auto (Ashland) called the police and reported that someone had broken into Ashland and that several sets of car keys were missing; additionally, a Pontiac Trans Am (the Trans Am) that was for sale and had been parked outside of Ashland was missing. Michigan State Police Trooper Tom Pankiewicz was dispatched to Ashland, where he observed that the southward door had been "broken open." Scott gave Trooper Pankiewicz a car battery he had found on the ground outside the southward door, which Scott suspected had been used to break open the door. Trooper Pankiewicz opined that the marks on the broken door matched the edge of the battery. David Thompson (David), Scott's brother, gave Trooper Pankiewicz two cellular phone numbers that were associated with people who had called to make inquiries about purchasing the Trans Am. One of those numbers belonged to a phone used by McKenna Sackett (Sackett), defendant's girlfriend.

The Trans Am was found later that day on North Point Road in Montcalm County. When Trooper Pankiewicz arrived at the car's location, he saw that it was "completely torched." The

-1-

Trans Am was missing engine components and its front-end suspension,[1] and had been set on fire. A "ratchet chain binder" that is used for towing cars was recovered from under the Trans Am. The Trans Am was found a half-mile from defendant's home.

Sergeant Ryan Maki of the Michigan State Police investigated the theft of the Trans Am. On May 23, 2018, defendant agreed to an interview with Sergeant Maki. Defendant told Sergeant Maki that he had viewed the Trans Am at Ashland the day before it was stolen. Defendant provided a DNA sample.

Defendant's father testified at trial that he owned a number of rachet chain binders, and that defendant frequently bought and sold cars and was "mechanically inclined" and knew quite a bit about cars. Sackett testified that she allowed defendant to use her phone, and that she herself did not call to inquire about the Trans Am.

No useful fingerprints were found on the ratchet chain binder or car battery. DNA recovered from the ratchet chain binder did not match defendant; however, DNA recovered from the battery was "3,600 times more likely" to have originated from defendant than an unrelated individual; the forensic scientist who analyzed the DNA sample testified that this provided "strong support" for concluding that defendant was a contributor to the DNA obtained from the battery handle.

The jury convicted defendant as described. After sentencing, defendant moved the trial court for a new trial on the ground that the prosecution had withheld exculpatory evidence. Specifically, defendant argued that the prosecution had withheld information that another person was being investigated regarding several cars that had been stolen and set on fire in Newaygo County in 2018, and that this person, Zack Farmer (Farmer) had ultimately admitted to stealing and burning several vehicles. In the alternative, defendant argued that evidence of Farmer's crimes was newly-discovered evidence that warranted a new trial. The trial court denied defendant's motion, holding that, under either theory, evidence of Farmer's crimes and the police investigation into those crimes was not material to defendant's case and that defendant had not been prejudiced by its absence.

This appeal followed.

## II. DENIAL OF MOTION FOR NEW TRIAL

Defendant argues that the trial court abused its discretion by denying his motion for a new trial. We disagree. We review for an abuse of discretion a trial court's decision on a motion for a new trial. See *People v Roa*, 491 Mich 271, 279; 815 NW2d 105 (2012). An abuse of discretion occurs when the trial court's decision falls outside the range of principled decisions. *Id*. We review de novo claims of constitutional error, such as the violation of the right to due process. *People v Jackson*, 292 Mich App 583, 590; 808 NW2d 541 (2011).

---

[1] As a result, the Trans Am could not have been driven to the location where it was found; it would have had to have been towed.

A trial court may grant a new trial to a criminal defendant on the basis of prosecutorial misconduct or newly-discovered material evidence, among other grounds. See MCR 2.612. A trial court may also grant a new trial on a ground that would support reversal on appeal. *People v Brown*, 279 Mich App 116, 144; 755 NW2d 664 (2008). In this case, defendant advanced two theories in support of his request for a new trial: (1) that the prosecution had suppressed exculpatory evidence in violation of its duty to disclose such evidence, and (2) in the alternative, that there was newly-discovered material evidence. We disagree in both respects.

The prosecution in a criminal trial is required to disclose exculpatory and material evidence within its possession, regardless of whether the defendant has requested such disclosure. *People v Henry* (*After Remand*), 305 Mich App 127, 157; 854 NW2d 114 (2014), citing *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Failure to disclose exculpatory or material evidence, also known as *Brady* material, is a violation of a defendant's right to due process of law. *Id*. The elements of a *Brady* violation are that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (citation omitted). Exculpatory evidence is evidence that is favorable to the defense, including impeachment evidence. *Id*. Evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings against defendant would have been different. *Id*. Further, even if the elements of a *Brady* violation are met, a defendant must also show that he did not possess the evidence himself and could not have obtained it with reasonable diligence. *Id*. at 151.

In this case, defendant argues that the prosecution failed to disclose a police report from the Newaygo County Sheriff's Department stating that, in 2018, several cars were stolen and burned in Newaygo County, that law enforcement investigated Farmer for these crimes, and that Farmer had ultimately admitted to stealing and burning several vehicles in 2018.

Defendant cannot satisfy the first element of the *Brady* violation test, i.e., that the prosecution was in possession of evidence favorable to defendant. Defendant has not presented evidence that Farmer was ever considered a suspect in relation to the crimes with which defendant was charged. Rather, the evidence shows that Farmer was investigated for, and confessed to, somewhat similar crimes committed in the same general geographical area nearly two years after the crimes with which defendant was charged occurred. Defendant has provided no authority for the proposition that the prosecution was required to disclose every criminal investigation for every similar crime that was committed while defendant's case was pending. The prosecution has a duty to "learn of any favorable evidence known to the others acting on the government's behalf *in the case*, including the police." *Kyles v Whitley*, 514 US 438; 115 S Ct 1555; 131 L Ed 2d 490 (1995) (emphasis added). But defendant seeks to charge the prosecution with the duty to learn of, and disclose, all investigations into similar crimes in roughly the same geographical area, even if they occur years after the offense that is the basis of the prosecution's case, and even if the investigations were performed by a different law enforcement agency. We decline to impose such a duty.

Moreover, we agree with the trial court that the evidence was not reasonably likely to have altered the course of the proceedings against defendant. Although Farmer's crimes involved stealing and burning vehicles, there were numerous differences between those acts and the acts that defendant was charged with committing. The vehicles that Farmer admitted to burning did

not have parts taken from them prior to burning, nor do they appear to have been towed to a location before being burned. Additionally, the cars were not stolen by breaking into an automobile dealership. Moreover, the police report contains statements from witnesses indicating that Farmer had come "back from Texas in February of 2018." Although, according to the report, the Newaygo County Sheriff's Department and the White Cloud Police Department suspected Farmer of other vehicle thefts and arsons than those to which he had confessed, none of these suspected thefts or arsons occurred before 2018. On balance, the information contained in the police report, had it been disclosed, is not reasonably likely to have resulted in a different outcome for defendant; it is simply information about somewhat similar crimes committed in a similar geographical area nearly two years after the crimes defendant was charged with were committed. Cf *Kyles*, 514 US at 453 (noting the numerous ways in which the evidence in the defendant's case could have been viewed differently by the jury if they had been provided with the undisclosed evidence).[2]

In the alternative, defendant argues that the police report was newly-discovered evidence that entitled him to a new trial. We disagree. To justify a new trial on the basis of newly-discovered evidence, the moving party must show that: (1) the evidence itself, and not merely its materiality, is newly-discovered; (2) the evidence is not merely cumulative; (3) including the new evidence on retrial would probably cause a different result; and (4) the party could not with reasonable diligence have discovered and produced the evidence at trial. *Roa*, 491 Mich at 279. As discussed, we agree with the trial court that the evidence offered by defendant was unlikely to have produced a different result in defendant's first trial; for the same reasons, we hold it unlikely to have produced a different result on retrial. *Id.*

The trial court did not abuse its discretion by denying defendant's motion for a new trial.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the evidence presented at trial was insufficient to support his conviction for breaking and entering with intent to commit a felony.[3] We disagree. We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In reviewing the sufficiency of the evidence, this Court must

---

[2] We also note that, to the extent defendant argues that the prosecution erred by failing to disclose that it had not tested Farmer's DNA against the DNA sample from the battery in order to exclude him as a donor, the prosecution is not required to disclose everything it *did not* do during the course of an investigation, nor does the prosecution possess an affirmative duty to search for evidence to aid defendant's case. *People v Burwick*, 450 Mich 281, 289 n 1; 537 NW2d 813 (1995).

[3] Defendant does not separately argue that the evidence was insufficient to support his conviction for UDAA; rather, he merely argues that "[s]ince there is insufficient evidence to convict Defendant-Appellant of breaking and entering with intent to commit a felony, there is also insufficient evidence to convict him of taking possession of and driving away a motor vehicle." As stated, we find that the evidence in fact was sufficient to support his conviction for breaking and entering with the intent to commit a felony; therefore, his sole argument concerning his UDAA conviction also fails.

view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). However, we do not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended 441 Mich 1201 (1992). It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The elements of breaking and entering with intent to commit a felony are: "(1) defendant broke into a structure, (2) defendant entered the structure, and (3) at the time of the breaking and entering, defendant intended to commit a felony." *People v Smith*, 318 Mich App 281, 288; 897 NW2d 743 (2016). Taken in the light most favorable to the prosecution, the evidence offered at trial was sufficient for the jury to conclude that defendant broke and entered into Ashland with the intent to commit a felony, i.e., to obtain the keys necessary to take unlawful possession of the Trans Am and drive away with it. The prosecution presented evidence that defendant's DNA was found on a car battery used to break open the southward door of Ashland. Scott testified that car keys and the Trans Am were missing the next morning; apart from that, there was no evidence that other items were stolen or broken. Evidence was also presented that defendant went to Ashland the day of the break-in[4] and looked at the Trans Am, and had discussed high-end modifications that David and Scott had made to the car's engine. Scott testified that, during this discussion, he retrieved the keys to the Trans Am in defendant's presence. A rational jury could conclude that someone broke into Ashland with a plan to take the keys to the Trans Am and drive away with it. Further, the jury could conclude that that person was defendant, because his DNA was present on the car battery and he had the opportunity during his earlier visit to learn where the keys were kept.

Although defendant argues that much of the evidence against him was circumstantial (apart from the DNA evidence), again, circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich at 757. Moreover, although defendant argues that the prosecution did not identify all of the DNA donors present on the car battery's handle, he does not explain precisely how the presence of others' DNA on the handle would negate the presence of his own. In any event, the prosecution is not required to negate every theory of innocence. *Nowack*, 462 Mich at 400. The evidence offered at trial, viewed in the light most favorable to the prosecution, *Reese*, 491 Mich at 139, and without invading the province of the jury to judge credibility, *Wolfe*, 440

---

[4] As noted, Sergeant Maki testified that defendant admitted during his interview to having visiting Ashland, but stated that the visit occurred the day before the Trans Am was stolen.

Mich at 514, was sufficient to support defendant's conviction for breaking and entering with intent to commit a felony. *Reese*, 491 Mich at 139.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Deborah A. Servitto