*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MYRON JACKSON, JR.,

        Defendant-Appellant.

UNPUBLISHED
April 10, 2025
9:48 AM

No. 368151
Muskegon Circuit Court
LC No. 2015-066685-FC

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

In 2016, defendant pleaded no contest to second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to consecutive terms of 16 to 24 years' imprisonment for the second-degree murder conviction and two years' imprisonment for the felony-firearm conviction. Defendant moved for relief from judgment in 2020 and 2023. The trial court denied both motions. Defendant now appeals by leave granted[1] the trial court's order denying his successive motion for relief from judgment. We affirm.

## I. FACTUAL BACKGROUND

In the early-morning hours of February 16, 2013, defendant was involved in a gang-related shooting while he was driving a car. Defendant exchanged gunfire with men in another vehicle. The victim in this matter sustained a fatal gunshot to his torso. The autopsy report noted that the bullet that killed the victim was still intact. It was later identified as a .38-caliber metal jacketed bullet by the Michigan State Police (MSP) forensics unit. Several other .38-caliber cartridges and one nine-millimeter cartridge were recovered from the crime scene, including from the vehicle that defendant drove. When detectives identified defendant as a suspect, he was already incarcerated on an unrelated felony-firearm conviction involving the use of a revolver. During a police

---

[1] *People v Jackson, Jr*, unpublished order of the Court of Appeals, entered February 28, 2024 (Docket No. 368151).

interview, defendant admitted to firing at the men in the vehicle. Defendant also stated that he could not recall what type of weapon he used that night, but he thought that it was the same weapon for which he was later incarcerated. In any event, defendant had disposed of the weapon, so the police were unable to verify that it was the same gun that earned defendant a separate firearms conviction.

Two months later, defendant requested another police interview, during which he expressed a desire to recant his earlier statements. Defendant claimed that inmates associated with the rival gang had threatened him and forced him to tell law enforcement that he was involved in the victim's death. Nevertheless, defendant agreed to plead no-contest to second-degree murder and felony-firearm as part of a *Cobbs*[2] agreement. At the plea hearing, defendant stated that he had not been threatened or promised anything for his plea and that he was pleading of his own free choice. Defendant also affirmed that he understood the plea. The trial court accepted defendant's no-contest plea as knowing, voluntary, and accurate. Defendant was thereafter sentenced as earlier described.

In 2020, defendant moved for relief from judgment, arguing that defense counsel was ineffective for telling him to plead no contest. Defendant also argued that new evidence showed that he was not the initial aggressor in the altercation that led to the victim's death and that he acted in self-defense. The trial court denied defendant's motion. In 2023, defendant again moved for relief from judgment, arguing that newly discovered evidence showed that he was actually innocent. Defendant alleged that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963) by failing to provide defendant with three photographs of the bullet recovered from the victim's torso. Defendant explained that he only discovered the photos after hiring a private investigator, who filed a request for information under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* After obtaining the photos, defendant had them evaluated by a firearms expert, who concluded that the bullet could not have been fired from defendant's weapon. Accordingly, defendant argued that his plea was involuntary and that his due-process rights were violated as a result of the prosecutor's *Brady* violation.

The trial court concluded that defendant was not entitled to relief from judgment or a new trial and denied his successive motion for relief from judgment, stating:

> Generally, a defendant may only file one motion for relief from judgment. MCR 6.502(G)(1). The relevant exception is that a defendant may file a subsequent motion on a claim of new evidence that was not discovered before the first motion was filed. MCR 6.502(G)(2)(b). But that does not negate the defendant's responsibility to use care, diligence, and vigilance in securing and presenting evidence. *People v Owens*, 338 Mich App 101, 122; 979 NW2d 345 (2021). To establish that newly discovered evidence warrants a new trial, the defendant must establish that the evidence itself (1) is newly discovered, (2) is not cumulative, (3) was not previously discoverable and producible by the defendant's use of

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

reasonable diligence, and (4) makes a different result probable on retrial. *Id.* at 122-123.

\* \* \*

[Defendant]'s first problem is that his expert did not make his statement on oath or affirmation. To be a valid affidavit, a document must be (1) a written or printed declaration or statement of facts, (2) made voluntarily, and (3) confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation. *Detroit Leasing Co v Detroit*, 269 Mich App 233, 236; 713 NW2d 269 (2005). A document that is not notarized is not a valid affidavit. *Id.* The statement of [defendant's] expert is not notarized, it does not even include any language that might be taken as an oath or affirmation. Therefore, it is invalid and is not evidence that the bullet that killed [defendant's] victim could not have been fired from [defendant's] gun.

This leads to [defendant's] second problem: because there is nothing about the photographs that is exculpatory, the court finds that there was no *Brady* violation. It is only the purported opinion of [defendant's] expert that could not have fired the bullet. That purported opinion is about the bullet, and [defendant] offers no facts or argument to show that he could not have obtained the bullet itself in pre-trial discovery and have had an expert examine it then. The court finds, therefore, that [defendant] has not established that his "new" evidence was not previously discoverable.

The court thus concluded that defendant's successive motion for relief from judgment failed on the basis of defendant's failure to show that newly discovered evidence warranted granting a new trial. The court likewise determined that the prosecutor's failure to turn over the photographs of the bullet was not a *Brady* violation. This appeal followed.

II. ANALYSIS

Defendant argues that the trial court abused its discretion by denying his motion for relief from judgment under MCR 6.502(G)(2) because newly discovered, exculpatory evidence entitled him to relief. He additionally argues that the prosecutor violated *Brady* by failing to turn over the photographs. We disagree.

A. WAIVER

As an initial matter, the prosecutor argues on appeal that defendant waived his right to bring a successive motion for relief from judgment because he entered a no-contest plea in the trial court. In support of this proposition, the prosecutor cites *People v New*, 427 Mich 482; 398 NW2d 358 (1986). In *New*, our Supreme Court opined that a no-contest plea is essentially the same as a guilty plea for purposes of filing a direct appeal. *Id.* at 491. The *New* Court explained:

Since a plea of nolo contendere indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual

-3-

guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove [a] defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of nolo contendere. Hence, we hold that a plea of nolo contendere has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of nolo contendere. [*Id*. at 493 (footnotes omitted).]

The prosecutor also cites *People v Veliz*, unpublished per curiam opinion of the Court of Appeals, entered January 18, 2007 (Docket No. 265049)[3], in which this Court found that claims pertaining to *Brady* violations may not be brought on direct appeal if a defendant has pleaded guilty or no-contest.

The prosecutor asks this Court to adopt the reasoning in *New* in the context of defendant's successive motion for relief from judgment and find that he was not entitled to move for relief from judgment because he entered a no-contest plea to the charges at issue. However, *New* does not stand for the proposition that a defendant who enters a guilty or no-contest plea may not later file a motion for relief from judgment, or, as is the case here, a successive motion for relief from judgment. Indeed, the prosecutor cites no authority to that effect. We do not find the prosecutor's argument persuasive. Motions for relief from judgment, as well as successive motions for relief from judgment, are governed by the procedures set forth in MCR 6.500 *et seq*. We will apply the Michigan Court Rules as written.

## B. STANDARDS OF REVIEW

We review a trial court's ruling on a motion for relief from judgment for an abuse of discretion, and a court's factual findings for clear error. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). An abuse of discretion occurs when a "decision falls outside the range of reasonable and principled outcomes, or makes an error of law." *Id*. (citations omitted). A finding of fact is clearly erroneous when, although there is evidence to support it, this Court "is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citation omitted). "A trial court's decision on a *Brady* claim is reviewed de novo." *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022).

## C. SUCCESSIVE MOTION FOR RELIEF FROM JUDGMENT

Generally, a defendant may file "one and only one motion for relief from judgment . . . ." MCR 6.502(G)(1). As relevant to this appeal, a defendant may file a successive motion for relief from judgment "based on . . . a claim of new evidence that was not discovered before the first such motion." MCR 6.502(G)(2)(b). Before the trial court may consider a defendant's successive motion for relief from judgment, the defendant must first make a threshold showing that new

---

[3] Unpublished opinions are not binding on this Court under the rule of stare decisis, MCR 7.215(C)(1), but may be considered for their persuasive value. *People v Otto*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362161); slip op at 12 n 11.

evidence exists to support the motion. *People v Owens*, 338 Mich App 101, 114; 979 NW2d 345 (2021). Only after a defendant overcomes this hurdle may a court determine whether "good cause and actual prejudice warrant granting relief" in accordance with MCR 6.508(D). *Id*. at 115. The prosecutor does not argue that MCR 6.502(G)(2)(b) was not met and does not ask us to affirm on that basis. For purposes of this appeal, we therefore assume that defendant's successive motion satisfied MCR 6.502(G)(2)(b).

Once it is established that MCR 6.502(G)(2) has been satisfied, the trial court "shall promptly examine the motion, together with all the files, records, transcripts, and correspondence relating to the judgment." MCR 6.504(B)(1). If "it plainly appears from the face of the materials [presented] that the defendant is not entitled to relief," the trial court "shall deny the motion without directing further proceedings." MCR 6.504(B)(2). If the court elects to deny the motion, it "must include a concise statement of the reasons for the denial." MCR 6.504(B)(2). With regard to a motion for relief from judgment based on newly discovered evidence, a defendant who presents new evidence can demonstrate entitlement to a new trial when:

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).]

"In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible." *People v Johnson*, 502 Mich 541, 566-567; 918 NW2d 676 (2018) (citation omitted). In doing so, "the trial court is not acting as the 'ultimate fact-finder,' because the question is not whether to dismiss the criminal case but whether to retry the defendant." *People v Rogers*, 335 Mich App 172, 200; 966 NW2d 181 (2020) (citation omitted). "Given this, when analyzing the evidence offered for retrial, the trial court must consider 'whether a reasonable juror could find the [evidence] credible on retrial.' " *Id*. (citation omitted).

In defendant's successive motion for relief from judgment, he argued that the prosecutor violated *Brady* by failing to turn over photographs of the bullet that killed the victim. The victim's autopsy report mentioned that the medical examiner photographed the bullet, but the photographs were not attached to the report. Prior to filing his 2023 successive motion for relief from judgment, defendant hired a private investigator, who obtained the photographs in response to a FOIA request. In the motion, defendant noted that a .38-caliber bullet was used to kill the victim. He presented a report from a firearms expert attesting that a nine-millimeter-compatible weapon would most likely jam if it tried to fire a .38-caliber bullet.[4] The expert then opined that the bullet

---

[4] For clarity, the bullet found in the victim's torso was a .380 "automatic colt pistol" or ACP bullet. According to the expert's report, .38-caliber cartridges can contain .380 ACP bullets like the one found in the victim. However, the expert explained that a nine-millimeter cartridge cannot contain .380 ACP bullets, with very rare exceptions. The two different types of cartridges suggest two

that killed the victim could not have been fired from the nine-millimeter handgun defendant used during the shooting. Defendant also observed that the autopsy report stated that the bullet that killed the victim entered through his back. He argued that the victim could have been killed by one of his own friends, who also engaged in the shootout.

"[E]vidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *People v Rao*, 491 Mich 271, 281; 815 NW2d 105 (2012). In this case, the record does not support a finding that the evidence was newly discovered so as to satisfy the first prong of the *Cress* test. *Cress*, 468 Mich at 692. Defendant alleges that he only became aware of the photographs after hiring a private investigator, who then made a FOIA request. In contrast, the prosecutor asserts that defendant was aware of the photographs because they were mentioned in the autopsy report, which was admitted into evidence as an exhibit during the preliminary examination. Defendant does not contest awareness of the autopsy report; therefore, defendant was aware that photographs existed of the bullet, such that they cannot be considered newly discovered evidence. See *Rao*, 491 Mich at 281-282. This fact also addresses the third prong of the *Cress* test, because defendant could have used reasonable diligence to discover and produce the photographs mentioned in the autopsy report. See *Cress*, 468 Mich at 692. Additionally, as the trial court noted, defendant also could have used reasonable diligence to solicit his ballistics expert to examine the bullet itself before he decided to take a plea deal. Accordingly, the evidence was neither newly discovered nor incapable of being discovered and produced through reasonable diligence. See *id*.

Defendant has also failed to satisfy the second prong of the *Cress* test by showing that the evidence was not cumulative. See *id*. The photographs of the bullet offered no new, additional, or different information from what the bullet itself and the MSP forensics reports offered. Likewise, defendant's ballistics expert did not report findings about the nature of the bullet that differed from the MSP forensics reports, which were made available to defendant before he pleaded no contest. Thus, the photographs would merely have been cumulative of other evidence in the record.

Finally, the evidence would not have made a different result probable on retrial. See *id*. The photographs and report did not negate the established evidence on the record. Defendant argues that his expert's report would impeach the officers' testimonies at the preliminary examination, but defendant fails to demonstrate "an exculpatory connection on a material matter between" their testimonies and the new evidence, much less that defendant would be acquitted, which he alleges is possible. *Grissom*, 492 Mich at 319. Again, to be exculpatory and lead to a different result, the evidence would need to prove that, during the incident, defendant possessed and fired a revolver and that defendant could not have possessed any different firearm capable of firing a .38 caliber bullet. Instead, the evidence supports what the record already established regarding the nature of the bullet and the murder weapon.

---

different weapons were used during the shooting—one type that could fire the bullet that killed the victim, and one type that likely could not.

Defendant likewise cannot show that the prosecutor violated *Brady* by failing to turn over the photographs. A *Brady* violation occurs when "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). As to the first factor, the record does not indicate that defendant was deprived access to the photographs of the bullet. Instead, defendant was aware of the admission of the autopsy report, which mentioned that photographs of the bullet were taken. Regarding the second factor, the photographs were not favorable, that is, "exculpatory or impeaching," because they offered no additional information from the bullet itself, to which defendant had access. See *id*. Additionally, the officers' testimonies regarding the bullet, cartridges, and firearm did not differ from what photographs indicated. Accordingly, the photographs were not material, pursuant to the third factor, because there was no reasonable probability that they could "undermine . . . confidence in the outcome." *Id*. Therefore, no *Brady* violation occurred in this matter. For all of the foregoing reasons, the trial court did not abuse its discretion by dismissing defendant's successive motion for lack of newly discovered evidence.[5]

## D. EXPERT REPORT

Defendant also argues that the trial court erred by declining to review the report submitted by defendant's firearms expert. We agree, but find that the error was harmless.

Although the court considered the photographs presented by defendant, it declined to review the expert's report, in which the expert opined that the bullet depicted in the photographs could not have been fired from the gun defendant claimed to have used during the shooting. The court found that the expert's report was an "affidavit," and declined to review it because it was not signed and sworn in accordance with Michigan law. See *Rataj v City of Romulus*, 306 Mich App 735, 755 n 8; 858 NW2d 116 (2014) (finding that an unsigned, unsworn affidavit is invalid). Our review of the record indicates that defendant labeled the expert's report as an "affidavit of fact," which may have led to the court's conclusion that it was invalid and need not be considered. However, the substance of the report clearly indicates that it was intended to be an expert's report, which was signed by its author, but not sworn as an affidavit. While an affidavit is subject to specific requirements under court rule, see MCR 2.119(B), there is no requirement that an expert's report must be signed and sworn in the same manner.

However, when a trial court errs, we must then "determine whether this error requires reversal of defendant's conviction." *People v Lukity*, 460 Mich 484, 491; 596 NW2d 607 (1999). Under Michigan's harmless-error rule, reversal is only required if the error was prejudicial. *Id*. at 491-492. An error is prejudicial if it "undermines the reliability of the verdict." *People v Mateo*,

---

[5] While we agree with the trial court's ultimate ruling, its opinion does not clearly explain its reasoning regarding the *Cress* factors, separate from defendant's *Brady* claim. Because no hearing was held on defendant's successive motion for relief from judgment, the court's opinion is the only document available on appeal to explain why the motion was denied. We recognize that there is no statutory requirement that a trial court explain its rationale in these matters on the record. We encourage trial courts to provide as complete a record as possible for appellate review purposes.

453 Mich 203, 211; 551 NW2d 891 (1996). As established, defendant failed to demonstrate that the evidence was exculpatory, and the record does not support a finding that the photographs and expert report would result in a favorable outcome at trial. See *Cress*, 468 Mich at 692. Therefore, this error was harmless, and reversal is not required. *Lukity*, 460 Mich at 491-492.

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick